646 So.2d 1217 (1994)
Valena KOZINA
v.
Kenneth ZEAGLER, Sandra Zeagler and the Hanover Insurance Company.
No. 94-CA-413.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 1994.
*1219 Charles P. Ciaccio, New Orleans, for plaintiff-appellee.
Sidney J. Angelle, Metairie, for defendant-appellant.
Before DUFRESNE and GOTHARD, JJ., and JOHN C. BOUTALL, J. Ad Hoc.
DUFRESNE, Judge.
The issue in this appeal is whether a written compromise of a tort suit should be set aside because of an alleged misunderstanding on the part of the tortfeasors' insurer as to what sums it obligated itself to pay to the plaintiff. The trial judge determined that the words of the compromise were clear and explicit, and led to no absurd consequences, and he therefore ordered the insurer to comply with the terms of the agreement as written. For the following reasons, we affirm that decision.
The facts alleged in the petition of Valena Kozena, plaintiff-appellee, were that a pet rabbit belonging to her neighbors, Kenneth and Sandra Zeagler, frequently escaped into her back yard through a hole in the fence, and that her repeated requests of the Zeaglers to fix the fence were ignored. On the day in question here, the animal had again escaped into her yard and was eating her plants. As she attempted to "shoo" the rabbit back through the hole, it jumped up and bit her on the right hand. The attack so startled her that she lost her balance and fell against the fence, seriously injuring her left thumb. She brought suit against the Zeaglers and their insurer, The Hanover Insurance Company, for general and special damages, and shortly before trial the matter was compromised.
The compromise agreement was memorialized by a January 22, 1993, letter from Hanover's counsel to plaintiff's counsel, as follows:
This will confirm our settlement of the captioned matter. In consideration of dismissal of all claims of your client, Valena Kozina, against all defendants herein, the Hanover Insurance Company will pay your client the sum of $20,000.00. The Hanover also agrees to satisfy payment of your client's medical expenses of $20,151.78 by reimbursing Medicare to the extent of their payments and by making a further payment to your client of the difference between the $20,151.78 and the Medicare payments.
In further consideration of the settlement, it is agreed that your client is dismissing any and all claims for any future medical expenses incurred beyond today's date. Furthermore, it is agreed that you will forward to me within seven (7) days of today a complete package of medical bills making up the $20,151.78 figure, as well as any information you have concerning the Medicare payments. Within thirty (30) days of our confirmation of what Medicare has paid, Hanover will pay your client the difference between her total medical specials of $20,151.78 and what Medicare has paid.
The $20,000.00 in general damages was promptly paid by the insurer. Plaintiff's *1220 counsel also duly sent to Hanover's counsel on February 1, 1993, a package of medical bills which totaled a few dollars more than the settlement figure of $20,151.78. He was unable at that time to provide the final figure for the Medicare payments, and in fact was not able to get that information from the appropriate agency until September 15, 1993. The amount owed Medicare for reimbursement was then determined to be $5,748.58, and this information was sent to counsel for Hanover on September 20. In the accompanying letter, plaintiff's counsel requested that a check issue to his client in the amount of $14,403.20, the difference between the Medicare reimbursement and the settlement figure for the medicals of $20,151.78, as per the settlement agreement.
Hanover refused to pay this difference. It pointed out that health care providers, in order to receive payment from Medicare, are required to write off the difference between their normal charges and the amount that Medicare authorizes for any particular procedure. It asserted that some $12,750 of the $14,400 sought by the plaintiff here was, in fact, the amount written off, and that under federal law, once the providers accepted payment from Medicare, they were prohibited from subsequently collecting this difference from either the patient or a tortfeasor responsible for the patient's injuries. The insurer claimed that the same principles which preclude health care providers from recouping the write-off should apply equally to the patient's claims against the tortfeasor. It finally urged that its intent in confecting the settlement agreement, and its understanding of the document, was that it would only reimburse plaintiff for those medical expenses that she was actually required to pay, above and beyond the amounts paid by Medicare, and that to construe the agreement otherwise would result in a windfall to plaintiff.
Plaintiff responded to this refusal to pay by urging a motion to compel Hanover to honor the settlement, as well as asking for penalties and attorney fees for the insurer's breach of its good faith duty to pay the remainder of the claim, as provided by La. R.S. 22:1220. After a full hearing on the matter, the trial judge ordered Hanover to pay the $14,403.20, but denied penalties and attorney fees.
Hanover has now appealed that judgment. Plaintiff has answered the appeal as to the denial of penalties and attorney fees, and seeks further damages on grounds that Hanover's appeal is frivolous.
We first note that the federal statutes and jurisprudence which Hanover cites in brief are not applicable to this case. Those federal provisions and principles concerning Medicare write-offs prohibit health care providers who accept Medicare payments from seeking reimbursement of the written off amounts from any source, but have nothing directly to do with the rights of a tort victim against the tortfeasors or their insurers, See Rybicki v. Hartley, 792 F.2d 260 (1st Cir.1986). Moreover, Louisiana law treats Medicare as a collateral source, and thus precludes insurers from reducing their own liability because of payments made on a tort victims behalf by such sources, Brannon v. Shelter Mutual Ins. Co., 520 So.2d 984 (3rd Cir.1997).
But whatever statutes or jurisprudence, either federal or state, might have come into play had the matter gone to trial, when the defendants chose instead to compromise the matter, the settlement contract became the law between the parties, La.Civ. Code, Arts. 1983 and 3071. Further, such compromises cannot be attacked by either party for any error of law or any lesion, La.Civ.Code, Art. 3078. The only circumstances in which they can be set aside are when there is error as to the person or matter in dispute, fraud or violence in the confection of the agreement, La.Civ.Code, Art. 3079, or where the agreement is against public policy, La.Civ.Code, Arts. 1968 and 2030.
In the present case, there are no allegations of fraud or violence, nor is it suggested that there was an error as to the person. What is urged is, first, that because in the insurer's opinion federal law would have precluded an award to plaintiff of the amount written off by the health care providers had the matter been tried, it would therefore *1221 be against public policy for the insurer to agree to pay this sum or for the plaintiff to receive this windfall. As already noted, however, what plaintiff might legally have been entitled to had the matter been tried is not the question here. Indeed, even if the insurer had mistakenly agreed to some term that the law would not have provided, La.Civ. Code, Art. 3078, specifically precludes attacking a settlement on grounds of error of law. What is at issue here is simply what the insurer agreed to pay the plaintiff to avoid a trial, not what she might legally have been entitled to had there been a trial. It must further be pointed out that the insurer's suggestion that it would somehow be unconscionable and against public policy for plaintiff to be paid this "windfall" is not only unfounded, but disingenuous. What the insurer is essentially arguing is that it, rather than plaintiff, should reap the "windfall." The amount at issue actually represents money foregone by the health care providers, and in the posture of this case we can discern no public policy which would recommend that the insurer, rather than the plaintiff, should profit by this circumstance, See Brannon v. Shelter Mutual Ins. Co., supra.
The insurer's second argument is that there was an error in the settlement agreement as to what it actually committed to pay the plaintiff. In Brown v. Drillers, Inc., 630 So.2d 741 (La.1994), the court discussed the interpretation of compromises, and held that, as in the case of any other contract, reference to La.Civ.Code, Art. 2046, is proper. That article provides that when the words of an agreement are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. In the present case, the district judge applied Article 2046, and determined that the agreement was plain on its face and led to no absurd consequences. We agree. Not once, but twice, the settlement letter specifies that the insurer will pay to the plaintiff the difference between $20,151.78, and the amount to be refunded to Medicare, as well as an additional $20,000.00. In return, the plaintiff is to forego all claims, including any future medicals, relating to the incident at issue. The insurer thus committed itself to pay a total of $40,151.78, to settle the claim. Not only is there nothing ambiguous about the document, but the result can hardly be called absurd. Had plaintiff established liability at trial, an award for general damages in the $20,000.00 range would not have been unusual, and under the Louisiana collateral source rule, the insurer would probably have been cast for the total amount of the medical bills, before the Medicare write-offs were made by the health care providers. In these circumstances, the trial judge was correct in enforcing the compromise as written.
Plaintiff, for her part, appeals that portion of the judgment denying penalties and attorney fees, as per La.R.S. 22:1220. That statute provides pertinently that an insurer who fails to pay a claim within thirty days after an agreement is reduced to writing shall be liable for any damages sustained by the claimant as a result of that breach. It further provides that in addition to damages, the claimant may also be awarded penalties. In the present case, the operative dates are as follows. The settlement agreement provided for payment of $20,000.00, in general damages, and that was done within a week of the date of the settlement. The agreement further provided that payment of the medicals would be made upon plaintiff's counsel providing the Medicare reimbursement amount. That was done by the letter of September 20, 1993, which also included the request for $14,403.20, the difference between the agreement figure of $20,151.78, and the Medicare reimbursement of $5,748.58. It was upon receipt of this information and demand for payment that the present dispute arose. It appears that plaintiff's counsel was informed of the disagreement verbally sometime in October because he filed the motion to compel the insurer to pay the $14,403.20, on October 27. On November 1, 1993, the insurer tendered a check for $1,055.62, to plaintiff for what it calculated to be her actual out-of-pocket expenses above what Medicare had paid. On November 24, 1993, the day of the hearing on the motion, the insurer also produced the check for the Medicare reimbursement of $5,748.58.
*1222 Plaintiff asserts that her credit rating has been damaged by the actions of the insurer in not paying her timely as per the settlement agreement. The difficulty with this argument is that there is no evidence to sustain it. As per the agreement, the insurer was to pay both Medicare and plaintiff the remaining amounts within thirty days of receipt of the Medicare figure. The insurer tendered what it determined to be the plaintiff's out of pocket expenses of $1,055.62, on November 1, and disputed that any more was owing under the agreement. It also produced the check for the Medicare portion on November 24. The only reference to any possible credit problem was in the testimony of a hospital accountant who stated that notice of unpaid portions of plaintiff's bill had been sent to a credit bureau at some unspecified time. Neither was there any evidence to show that Medicare had made any unfavorable credit report due to its not being reimbursed for some two months after the amount due was known. On this showing, there was no error in the decision of the trial judge not to award damages. As to the amounts disputed by the insurer, the trial judge implicitly found that there was a reasonable basis to contest payment of these funds, and therefore that no penalties or attorney fees should be awarded. Because the denial of these amounts was based upon factual determinations, and because those determinations are not only not manifestly erroneous, but amply supported by the evidence, we affirm the actions of the trial judge in this regard as well.
Plaintiff's final argument is that she should be awarded further damages as per La.Code Civ.Pro., Art 2164, on grounds that the appeal by the insurer is frivolous. We disagree. Although plaintiff has prevailed in its claim in both the district court and this court, we do not find the insurer's position to be so devoid of any reasonable factual or legal basis as to constitute an abuse of the appellate process. We therefore deny plaintiff any additional damages. We do, however cast the insurer for all costs of this appeal.
For the foregoing reasons, the judgment of the district court is hereby affirmed, and the appellant, The Hanover Insurance Company, is hereby cast for all costs of this appeal.
AFFIRMED.