770 So.2d 422 (2000)
Robert G. SUHOR, Jr., William Pastor and Gene Waguespack
v.
Theresa Hahn LAGASSE, LJE Partnership, E.J.L. Corp. and State Farm Mutual Automobile Insurance Company.
No. 2000-C-1628.
Court of Appeal of Louisiana, Fourth Circuit.
September 13, 2000.
*423 William E. Mura, Jr., Forstall, Mura & Power, New Orleans, LA, Counsel for Relator, Dorothy Suhor.
Sidney J. Angelle, William P. McGovern, Jr., New Orleans, LA, Counsel for Defendants-Respondents.
Court composed of Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY, Judge PATRICK M. SCHOTT.
PLOTKIN, J.
We grant this writ of certiorari to consider whether Louisiana's collateral source rule allows a tort victim to recover as special damages from a tortfeasor the amount of medical expenses written off and extinguished by healthcare providers who received direct payments from Medicare. For the reasons that follow, we hold that the collateral source rule does not give tort victims the right to recover medical expenses extinguished by operation of federal law governing Medicare.
In this civil action, plaintiff Dorothy Suhor seeks to recover for injuries resulting from a March 1997 automobile accident with State Farm's insured, Theresa Lagasse. The liability of the defendants was decided on a motion for summary judgment, and a jury trial has been scheduled to decide the amount of Ms. Suhor's damages.[1] Because Ms. Suhor became entitled to Medicare when she attained the age of 65 prior to this accident, the trial court was called upon to decide what amount of Ms. Suhor's past medical expenses may be put into evidence before the jury. While Ms. Suhor sought to claim the full costs initially billed by the providers, the defendants asserted that evidence of only the lower "allowable charges" permitted by Medicare should be presented. Judgment was rendered in defendants' favor, resulting in the present writ application by which Ms. Suhor seeks reversal of the trial court's evidentiary ruling.
Under the collateral source rule, a tortfeasor generally is not entitled to a credit for payments made to a plaintiff through collateral sources independent of the wrongdoer's procuration or contribution. Coscino v. Wolfley, 96-0702, p. 12 (La.App. 4 Cir. 6/4/97), 696 So.2d 257, 264. Generally, payments to a tort victim from a collateral source do not reduce the victim's recovery against the tortfeasor. Thus, the collateral source rule applies to situations where the victim receives compensation for his damages from a source independent of the tortfeasor. Under the rule, the payments received from the independent source are not deducted from the award the victim would otherwise receive from the tortfeasor. As a result of the collateral source rule, the tortfeasor is not able to benefit from the victim's foresight in purchasing insurance and other benefits.
This court has previously explained the purposes of the collateral source rule as follows:
There are several reasons for the existence of the collateral source rule. The reason most often stated is that the defendant should not recover from outside benefits provided to the plaintiff or procured by the plaintiff. For years the Louisiana courts struggled with the so-called "windfall" or "double-dip" aspect of the collateral source rule only to discover that no "windfall" or "double-dip" *424 in fact occurred. No "windfall" or "double-dip" occurred because the injured party's patrimony was diminished to the extent that he was forced to recover against outside sources and the diminution of patrimony was additional damage suffered by him.
For example, if the payment received by plaintiff was from annual leave or sick leave time, then those resources which would have been available to him but for the accident or injury, are no longer available and he has suffered the loss of annual or sick leave time for which he should be recompensed. This same logic applies to pension payments, government benefits, and gratuitous services.
In the case of insurance purchased by the plaintiff or by deductions made from the plaintiff's paycheck, the plaintiff has paid premiums which are a diminution of his patrimony as that cash would have otherwise been available to him. By going against his own insurance policy, he is diminishing the benefits of that policy which would otherwise be available, he has suffered a diminution of the patrimony by premium payments and his rates will rise providing a third area of loss.
Where insurance is provided by the employer, then that fringe benefit is in the nature of deferred compensation. The deferred compensation would have been available to him as cash per paycheck, but for the existence of the deferred compensation plan. Likewise, the benefits of the deferred compensation would have been available but for the injury.
Lastly, if the collateral source rule were not applied, then there would be no reason for an individual to purchase insurance. For example, if in a wrongful death case the tortfeasor was allowed a set-off for proceeds from the deceased's life insurance policy, then the deceased's estate suffered the loss not only of the amounts paid as premiums but also for the use of the money over the years, so that the deceased's estate could, theoretically, bring an action against the defendant to recover back the set-off amount.
Bryant v. New Orleans Public Service Inc., 406 So.2d 767, 769 (La.App. 4 Cir. 1981). As indicated by the above quote, two issues arise from application of the collateral source rule:
1. What impact does the collateral source rule have on tort deterrence? and
2. Does the collateral source rule allow the victim a double recovery?
Without further analysis, it is clear that the collateral source rule promotes tort deterrence and accident prevention. Potential tortfeasors would invest in accident avoidance because of concern that accidents will cause their insurance rates to increase, even if the collateral source rule did not preclude payment of the claim. Moreover, double recovery is normally prevented by subrogation and regulation of insurance rates. Moreover, for other policy reasons, double recovery is justified in some cases because the tortfeasor should not receive the benefits of the victim's thrift, employment benefits, or special services rendered by a third party. In those cases, the plaintiff receives full tort compensation, as does society.
According to materials produced by the United States Social Security Administration, "[m]edicare is our country's basic health insurance program for people 65 or older and many people with disabilities." SSA Publication No. 05-10024 (January 2000), p. 24. Medicare coverage falls under two parts: Part Ahospital insurance, which "pays for inpatient hospital care and certain follow-up services"; and Part B medical insurance, which "helps pay for doctors' services, outpatient hospital care and other medical services." Id. According to a 1999 Social Security Administration publication, persons procuring hospital insurance under Part A of the Medicare program were required to pay a $776 annual deductible for the first 1-60 days of a hospital stay, which amounts increased the *425 longer the patient was hospitalized. Medicare and You, Publication No. HCFA-10050 (Revised 1999), p. 5. Persons procuring medical insurance under Part B in 1999 paid a monthly premium of $45.50. Id. at 4. A $100 annual deductible applied to Part B medical insurance. Id. at 6. After the deductible was paid, Medicare paid 80 percent of allowable expenses; the patient paid the 20 percent balance of the expenses. Id.
Whatever the amount of Ms. Suhor's damage award in the instant case, the federal government can recover from her only those amounts actually paid by Medicare. 42 U.S.C. § 1395y(b)(2). In addition, although Ms. Suhor's health care providers have a lien against her recovery under LSA-R.S. 9:4752 "for the reasonable charges or fees" for their services, they are prohibited by 42 U.S.C. § 1395cc(a)(1) from claiming the "write-off" amounts at issue in this case from her. Thus, the issue to be decided by this court is whether Ms. Suhor can recover the written off charges, despite the fact she never became liable for those charges.
This court has previously held that amounts actually paid by Medicare on behalf of a tort victim fall under the collateral source rule. Weir v. Gasper, 459 So.2d 655 (La.App. 4 Cir.1984). Moreover, we have no trouble finding that the deductible amounts and the 20 percent co-payments for medical insurance paid by the plaintiff to health care providers fall under the collateral source rule. However, the question of whether amounts written off by health care providers in order to be eligible to receive direct payments from Medicare fall under the collateral source rule has never been directly decided by this court, or indeed by any Louisiana appellate court. However, three Louisiana appellate courts have considered the question of whether the amounts written off under the parallel provisions of the federal laws governing Medicaid are subject to the collateral source rule. Those cases are cited extensively by the parties to this writ application. However, for the reasons explained below, the decisions in those cases provide little guidance to this court.
Although many people confuse the two programs, Medicare and Medicaid are not the same. While Medicare is a federal basic health insurance program for persons 65 or older and for many people with disabilities, Medicaid is a "health care program for people with low income and limited assets," usually run by state welfare or social service agencies. SSA Publication No. 05-10024. Nevertheless, both programs were established by federal statute, and both contain a provision requiring health care providers receiving payment directly from the government to write-off certain charges. Thus, jurisprudence interpreting the parallel Medicaid write-off provision may be instructive to courts interpreting the Medicare write-off provision.
In Brannon v. Shelter Mutual Insurance Co., 520 So.2d 984 (La.App. 3 Cir. 1987), the court found that the tort victim was entitled to recover the amount written off by the Medicaid provider under the collateral source rule because the plaintiff retained a natural obligation to the hospital to pay those amounts. We note however that the hospital was actually paid in Brannon by a private insurer, who received the benefits of the Medicaid law because the patient was a Medicaid patient. Moreover, in finding that the patient retained a natural obligation to pay the hospital, the court failed to consider the requirements necessary for a natural obligation to arise.
In the most recent decision on the parallel Medicaid issue, the Louisiana Second Circuit Court of Appeal, applying the recognized factors for determining whether a natural obligation exists, held that no natural obligation to pay the healthcare provider arises when the provider agrees to contractually adjust medical charges in order to be eligible for direct payment from Medicaid. Terrell v. Nanda, 33-242, p. 6 (La.App. 2 Cir. 5/10/00), 759 So.2d 1026, *426 1030. As noted in Terrell, in order for a natural obligation to be brought "into existence," "[a] recognition of the obligation by the obligor must occur, either by performing the obligation or by promising to perform." However, a Medicaid healthcare provider that has written off its charges knows that it will receive payment from Medicaid and that it is "prohibited from billing or accepting payment" from the Medicaid patient. Id. (Emphasis added.) Since the Medicaid (or Medicare) provider is prohibited by federal law from accepting payment from the patient, no natural obligation arises. Id. We agree with the Louisiana Second Circuit Court of Appeal's holding that no natural obligation exists for a patient to pay a healthcare provider amounts written off by a Medicaid or Medicare healthcare provider. Accordingly, this court declines to follow the Brannon decision applying the collateral source rule to amounts written off by a Medicare provider.
Another case considering whether amounts written off by a Medicaid provider is subject to the collateral source rule is Williamson v. St. Francis Medical Center, Inc., 559 So.2d 929 (La.App. 2 Cir.1990), in which the court found that the collateral source rule does not apply. However, that case is limited to its circumstances, given the fact that it was a medical malpractice case and the healthcare provider was also the tortfeasor. The court found in that case that "the benefit to the plaintiffs of the contractual adjustment results from the `procuration or contribution' of the tort-feasor." Id. at 934.
A third case considering this issue is Kozina v. Zeagler, 94-413 (La.App. 5 Cir. 11/29/94), 646 So.2d 1217, a case that involved a Medicare provider, as opposed to a Medicaid provider. Ms. Suhor points to the following language from Kozina to support her argument that amounts written off by a Medicare provider are subject to the collateral source rule:
Those federal provisions and principles concerning Medicare write-offs prohibit health care providers who accept Medicare payments from seeking reimbursement of the written off amounts from any source, but have nothing directly to do with the rights of a tort victim against the tortfeasors or their insurers.
Id. at 4, 646 So.2d at 1220. Later in the case, the court added the following language:
The amount at issue actually represents money foregone by the health care providers, and in the posture of this case we can discern no public policy which would recommend that the insurer, rather than the plaintiff, should profit by this circumstance.
Id. However, the above statements are merely dicta, given the "posture" of the Kozina case. The sole issue before the Kozina court was interpretation of a settlement agreement. The settlement agreement, which the court noted was the law between the parties to the controversy, obligated the defendant to pay the amounts written off by the Medicare provider to the plaintiff. Id. In fact, the court noted that "the federal statutes and jurisprudence... are not applicable to this case." Id. at 4, 646 So.2d at 1220. Given the fact that the issues presented by the instant case are dramatically different from those presented by Kozina, that case provides no guidance to the court in deciding the instant controversy.
We agree with the Louisiana Second Circuit Court of Appeal's holding in Terrell that the amounts written off by a Medicaid provider do not fall under the collateral source rule for the same reason they do not give rise to a natural obligationbecause the healthcare provider was "required to accept the Medicaid payment as payment in full satisfaction of [the patient's] expenses and was prohibited from seeking further payment from [the patient]." 33-242 at 5, 759 So.2d at 1029. Moreover, for that reason, as well as the other reasons discussed below, we believe that the same rule should apply to *427 amounts written off by Medicare providers.
Critical to this decision is a fact that has never been discussed by any Louisiana court considering whether amounts written off by Medicaid or Medicare providers should fall under the collateral source rulei.e., the fact that none of the policy reasons for the collateral source rule stated by this court in Bryant apply. First, the benefit of the written-off amounts are not procured by the plaintiff, but are required by operation of federal law. The collateral source rule is designed to protect innocent victims whose patrimony has been diminished in order to procure the benefit of payment from a source other than the tortfeasor. Id., 406 So.2d at 768. Although the plaintiffs patrimony is diminished by the amounts paid in premiums and/or deductibles under the Medicare program, the charges written off are not actually paid by anyoneMedicare or the victim. The healthcare debt is simply extinguished by operation of law when the healthcare provider elects to accept payment of assigned benefits directly from Medicaid or Medicare. Thus, Ms. Suhor was not required to diminish her patrimony in order to secure the benefits of the written-off amounts. Instead, she is the beneficiary of a mass government benefit, which is also a benefit to society because it extinguishes third-party debt and reduces medical costs.
The collateral source rule is most commonly used to allow a plaintiff to recover amounts paid by automobile insurance medical payments provisions, separate hospitalization insurance benefits, wages paid by an employer, or monies and/or supplies furnished by a relative. In the normal insurance situations, the beneficiary of the insurance policy has paid a premium and the insurance company then pays all the charges incurred by the patient. Moreover, in some cases involving insurance, subrogation may occur. In those cases, the plaintiff receives no double recovery, in whole or in part, because the obligation is transferred to the subrogee. Further, the main policy reasons for the collateral source rule are grounded in the belief that the tortfeasor should not profit from the victim's prudence in obtaining insurance, and that reducing the recovery by the monies paid by a third party would hamper the deterrent effect on tort law. However, no one pays the amounts written-off by the health care provider under federal law. As to wages and gratuitous services, they are fringe employment or family benefits that should not benefit the tortfeasor because they arise out of the unique relational connection to the victim's employment and family.
However, unlike the cases where a plaintiff benefits from independently-procured insurance coverage, Ms. Suhor would indeed receive a "windfall" if she is allowed to recover amounts that the healthcare provider is prohibited by federal Medicare law from accepting from her. Ms. Suhor can be made whole by payment of the amounts actually paid by Medicare to the healthcare provider. Ms. Suhor cannot be allowed to recover a non-existent debt. Thus, Ms. Suhor would indeed receive a "windfall" if she is allowed to recover amounts that the healthcare provider is prohibited by federal Medicare law from accepting from her. However, she may present proof of the amounts she paid in deductibles and co-payments for medical insurance, and may recover those amounts under the collateral source rule.
Accordingly, we find that the trial court properly granted the motion in limine dismissing Ms. Suhor's "claims for medical specials to the extent she seeks compensation for any payments classified as Medicare write-offs and to allow the jury to review only the post write off amounts." For the same reason, the trial court properly denied Ms. Suhor's partial motion for summary judgment.
Additionally, we find no merit in Ms. Suhor's cursory argument that a motion in limine is not a procedural device *428 recognized by any provision of Louisiana law. Motions in limine have long been regularly used with approval in Louisiana courts. See State v. Brown, 371 So.2d 746 (La.1979); McElroy v. Allstate Insurance Co., 420 So.2d 214 (La.App. 4 Cir.1982). Moreover, the defendants attached a motion in limine filed by Ms. Suhor in this case to their opposition to the application for supervisory writs. Ms. Suhor cannot take advantage of a procedural device when it suits her purposes, then be allowed to deprive the defendants of use of the same procedural device. The filing of the motion in limine by the defendants in this case was appropriate.
Accordingly, we affirm the trial court judgment granting the motion in limine filed by defendants, Theresa Hahn Lagasse and State Farm Mutual Automobile Insurance Co. We also affirm the trial court's denial of the plaintiffs' motion for partial summary judgment concerning special damages.
WRIT GRANTED; RELIEF DENIED.
MURRAY, J., concurs with reasons.
MURRAY, J., concurs with reasons.
Because of the differences between private insurance and the federal Medicare program, I agree that the issue presented here cannot be decided solely by a traditional analysis under the collateral source rule. Nevertheless, because it appears that Ms. Suhor can be made whole for her past medical expenses solely by reference to Medicare's allowable charges, I concur in the determination to limit her evidence, and her recovery, accordingly. However, had one or more of the health care providers intervened in this suit, or otherwise asserted its rights to recover the full amounts against the tortfeasor and her insurer, a different result could obtain under applicable federal and state laws.
NOTES
[1] While the captions of these consolidated cases name other plaintiffs, only Ms. Suhor's damages are at issue here.