965 So.2d 890 (2007)
Deborah BATSON, Eula Maye Batson and Billy M. Batson
v.
SOUTH LOUISIANA MEDICAL CENTER and State of Louisiana, Through the Department of Health and Human Resources.
No. 2006 CA 1998.
Court of Appeal of Louisiana, First Circuit.
June 13, 2007.
*891 Stephen S. Stipelcovich, Michael J. Samanie, Houma, Counsel for Plaintiffs/Appellees, Deborah Batson, Eula Maye Batson, and Billy M. Batson.
Gregory C. Weiss, Mandeville, Counsel for Defendants/Appellants, South Louisiana Medical Center and State of Louisiana, through the Department of Health and Human Resources.
Before: CARTER, C.J., WHIPPLE and McDONALD, JJ.
WHIPPLE, J.
This matter is again before us on appeal from a judgment of the trial court: (1) finding and declaring that South Louisiana Medical Center (SLMC) and the State of Louisiana, through the Department of Health and Human Resources (collectively referred to as "the State"), defendants herein, had not satisfied the trial court's April 15, 1997 judgment in this matter; and (2) ordering the State to pay $322,169.05 awarded in the April 15, 1997 judgment for medical expenses for flexion contracture injuries suffered by the decedent, Deborah Batson, with judicial interest from July 21, 1991, until paid. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
This protracted litigation arose from a medical malpractice suit for injuries suffered by Deborah Batson while hospitalized in 1990 and 1991, at SLMC in Houma, Louisiana. At the original trial of this matter, the trial court found that Batson had suffered three separate and unrelated injuries resulting from independent acts of negligence. Those three separate injuries were: (1) sepsis and related injuries; (2) flexion contractures; and (3) decubitus ulcers. Having found three separate and unrelated injuries, the trial court further determined that a separate $500,000.00 cap on damages as set forth in LSA-R.S. 40:1299.39(F) of the Malpractice Liability for State Services Act (MLSSA) applied to each independent act of negligence causing a separate and independent injury. In its April 15, 1997 judgment, the trial court awarded plaintiffs three separate $500,000.00 caps for Batson's injuries and also awarded medical expenses for each of the three injuries.[1]
In its initial appeal of the April 15, 1997 judgment, the State challenged the trial *892 court's finding that multiple statutory caps applied pursuant to LSA-R.S. 40:1299.39(F). Additionally, the State argued that the trial court erred in awarding Batson an amount of future medical expenses. With regard to the medical expenses awarded, this court found no merit to the State's argument, noting that LSA-R.S. 40:1299.39(F)(1) specifically stated that the court's judgment "shall include a recitation that the patient is or is not in need of future medical care and related benefits and the amount thereof." Batson v. South Louisiana Medical Center, 98-0038 (La.App. 1st Cir.12/28/98), 727 So.2d 613, 619, rev'd in part on other grounds, 99-0232 (La.11/19/99), 750 So.2d 949. The State never challenged the past medical expenses awarded, and it also made no further challenge to the future medical expenses awarded.
Instead, the State's appeal primarily challenged the trial court's holding that multiple caps applied. With regard to the issue of multiple caps, the Louisiana Supreme Court ultimately affirmed the trial court's finding that Batson was entitled to three separate $500,000.00 caps for her separate and independent injuries, holding that the MLSSA does not prohibit multiple statutory caps for multiple acts of negligence that produce separate and independent damages. Batson v. South Louisiana Medical Center (Batson I), 99-0232, p. 11 (La.11/19/99), 750 So.2d 949, 957. The Supreme Court then remanded the matter to this court with instructions to "review quantum under each cap." Batson I, 99-0232 at p. 11, 750 So.2d at 957.
On remand, this court affirmed the damages that had been awarded under each cap, finding no abuse of the trial court's discretion in its awards. Batson v. South Louisiana Medical Center (Batson II), 98-0038R, pp. 27-28 (La.App. 1st Cir.12/22/00), 778 So.2d 54, 68-69, writ denied, XXXX-XXXX (La.5/11/01), 792 So.2d 740. However, on remand to this court, the State raised the issue that it was entitled to judgment in its favor setting forth that it owed plaintiffs nothing, because the judgment purportedly had been fully satisfied by virtue of the settlement between plaintiffs and Robert Rowe, Leah Angelito and Medforce Physical Therapy Services, Inc. ("the physical therapy defendants").[2]Batson II, 98-0038R at pp. 23-24, 778 So.2d at 66. The State contended that the physical therapy defendants were qualified state health care providers and that Batson was only entitled to recover $1,500,000.00 in total damages from all qualified state health care providers, representing one cap for each claim. Thus, it contended, because the amount paid in settlement by the physical therapy defendants exceeded all three caps to which Batson was entitled, the State had no further liability to plaintiffs. Batson II, 98-0038R at pp. 23-24, 778 So.2d at 66.
Noting that the settlement by the physical therapy defendants involved Batson's flexion contractures claim only, this court ruled that, as a matter of law, there was no basis for granting the State a credit from these settlement proceeds against any obligation for the remaining two malpractice claims (i.e., the claim for sepsis and related injuries and the claim for decubitus ulcers). Batson II, 98-0038R at p. 24, 778 So.2d at 66-67. However, with regard to the State's liability to plaintiffs for Batson's flexion contractures claim, this court found that the trial court had never actually made a determination as to whether the physical therapy defendants were in fact qualified state health care providers who were covered by the MLSSA for the *893 instant claim and that this determination could be made only following an evidentiary hearing at the trial court level. Batson II, 98-0038R at pp. 26-27, 778 So.2d at 67-68. Thus, the matter was remanded to the trial court for the limited purpose of determining whether the State was entitled to a credit on the flexion contractures claim.[3]Batson II, 98-0038R at p. 27, 778 So.2d at 68.
The Louisiana Supreme Court then denied the State's application for writs of certiorari and review of this court's opinion in Batson II. Batson v. South Louisiana Medical Center, XXXX-XXXX (La.5/11/01), 792 So.2d 740. Because the trial court's April 15, 1997 judgment became final and definitive as to the damages awarded for the sepsis and related injuries claim and the decubitus ulcer claim upon the denial of the State's writ application, the State paid the damages caps awarded in the judgment for those two injuries, with interest, and also paid the amounts plaintiffs had paid in satisfaction of the Medicare and Medicaid liens, for a total payment of $2,103,389.71.
Plaintiffs then executed a Partial Satisfaction of Judgment, acknowledging this payment from the State, but specifically recognizing that "[t]his partial satisfaction of judgment does not in any way discharge the State of Louisiana from the estate's claim for flexion contractures and the damages awarded by this court on April 15, 1997" and that "[t]he portion of the judgment pertaining to the flexion contracture damages hereby remains in full force and effect and is not affected by this judgment [sic]."
On remand from this court to the trial court on the issue of whether the State was entitled to a credit on the flexion contracture claims, the trial court concluded that the physical therapy defendants were not state qualified health care providers under the MLSSA. Additionally, the court held that the physical therapy defendants had committed gross negligence and/or willful or wanton acts and that such acts excluded coverage under LSA-R.S. 40:1299.39(A)(1)(a)(iv)(cc). Thus, the trial court rendered judgment, finding that the State was not entitled to any credit against its liability to plaintiffs for the settlement between plaintiffs and other non-state parties.
On appeal, this court affirmed the trial court's finding that the physical therapy defendants were not qualified state health care providers, as defined in LSA-R.S. 40:1299.39(A). Consequently, this court also affirmed the trial court's conclusion that the State was not entitled to any credit against its liability to plaintiffs by virtue of the settlement between plaintiffs and the physical therapy defendants. Batson v. South Louisiana Medical Center (Batson III), 2002-2381 (La.App. 1st Cir.6/27/03), 858 So.2d 653, 660-661. *894 Thereafter, on November 5, 2003, the Louisiana Supreme Court denied the State's application for writ of certiorari. Batson v. South Louisiana Medical Center, 2003-2077 (La.11/5/03), 857 So.2d 490. The April 15, 1997 judgment therefore became final and definitive as of November 5, 2003, when the Louisiana Supreme Court denied the State further review of the last remaining issue in the State's appeal.
However, the State thereafter refused to pay the $322,169.95 amount awarded for past medical expenses related to the flexion contractures claim, contending that no further medical expenses were due. Because of the State's continuing refusal to pay the medical expenses awarded in the April 15, 1997 judgment related to the flexion contractures claim, plaintiffs filed a motion for declaratory judgment, requesting that the trial court render a judicial declaration of the proper amounts that remained due by the State pursuant to the April 15, 1997 judgment.
The State opposed the motion, contending that based on its payment of certain negotiated amounts for the Medicare and Medicaid liens for Batson's medical treatment, plaintiffs were no longer entitled to the amounts awarded for medical expenses for the flexion contractures claim in the April 15, 1997 judgment. Specifically, the State contended that although Batson's entire medical expenses, including expenses for the flexion contractures claim, totaled approximately $1,009,932.22, the State had satisfied a Medicare lien by payment in the amount of $78,616.43 and a Medicaid lien by payment in the amount of $184,204.87 and that all other amounts of medical expenses had been "written off' or "contractually adjusted" by the health care provider pursuant to the Medicare and Medicaid programs. Thus, the State contended, despite the final judgment previously rendered, plaintiffs were not entitled to recover as damages those portions of the medical expenses "contractually adjusted" or "written off."
Additionally, the State contended that in the Partial Satisfaction of Judgment, plaintiffs acknowledged that all medical liens had been satisfied and represented to the court that "there are no other outstanding liens pending in any way related to her claim for damages for decubitus ulcers, sepsis and flexion contractures." Based on this statement, the State contended, the Partial Satisfaction of Judgment constituted a compromise agreement between the parties, through which plaintiffs' claims for all medical expenses were extinguished.
Following a hearing on plaintiffs' motion for declaratory judgment, the trial court rejected the State's arguments, stating that the issue of medical expenses due plaintiffs had been addressed in the court's final judgment and that the State would not be allowed to now relitigate the issue or to again assert the collateral source rule. The trial court noted that the only issue before it was a determination of the precise sum plaintiffs were still owed under the court's final judgment. Thus, the court granted plaintiffs' motion for declaratory judgment and rendered judgment in plaintiffs' favor, declaring that the State had not fully satisfied its obligations under the court's April 15, 1997 final judgment and ordering that the State pay plaintiffs the $322,169.05 amount awarded in the April 15, 1997 judgment, which had become final.
From this judgment, the State appeals, contending that the trial court erred in: (1) failing to rule that the State's payment of Batson's adjusted Medicaid and Medicare liens fully satisfied the April 15, 1997 judgment, awarding plaintiffs $322,169.05 in medical expenses; and (2) failing to order that plaintiffs' acceptance of full payment *895 of the Medicaid and Medicare liens in partial satisfaction of judgment for medical expenses related to Batson's sepsis-related injuries, decubitus ulcers and flexion contractures constituted a waiver of any claim for medical expenses.

DISCUSSION
In its first assignment of error, the State contends that the trial court erred in ruling that the portion of the April 15, 1997 judgment awarding medical expenses for the flexion contractures claim had not been satisfied by payment of the Medicaid and Medicare liens, asserting that, generally, a plaintiff may not recover as damages that portion of medical expenses "contractually adjusted" or "written off" by a health care provider pursuant to the requirements of the Medicaid and Medicare programs. In support of its position, the State relies upon Terrell v. Nanda, 33,242 (La.App. 2nd Cir.5/10/00), 759 So.2d 1026, and Suhor v. Lagasse, XXXX-XXXX (La.App. 4th Cir.9/13/00), 770 So.2d 422.[4] We conclude, however, that the State is precluded from now raising a substantive challenge to the April 15, 1997 judgment, which has been final and definitive for many years.
Res judicata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. LSA-R.S. 13:4231. It promotes judicial efficiency and final resolution of disputes. Avenue Plaza, L.L.C. v. Falgoust, 96-0173 (La.7/2/96), 676 So.2d 1077, 1079. The doctrine of res judicata is not discretionary and mandates the effect to be given final judgments. Leon v. Moore, 98-1792 (La.App. 1st Cir.4/1/99), 731, So.2d 502, 505, writ denied, 99-1294 (La.7/2/99), 747 So.2d 20.
A judgment that decides the merits of the case in whole or in part is a final judgment. LSA-C.C.P. art. 1841; Tolis v. Board of Supervisors of Louisiana State University, 95-1529 (La.10/16/95), 660 So.2d 1206. A final judgment is conclusive between the parties except on direct review. LSA-R.S. 13:4231; Avenue Plaza, L.L.C., 676 So.2d at 1079. Moreover, a final judgment becomes final and definitive and acquires the authority of the thing adjudged if no further review is sought *896 within the time fixed by law, if the Supreme Court denies an application for certiorari, or if the judgment is confirmed on further review. LSA-C.C.P. arts. 2166(E) & 2167; Avenue Plaza, L.L.C., 676 So.2d at 1079; Tolis, 660 So.2d at 1206. Once a final judgment becomes final and definitive and acquires the authority of the thing adjudged, no court has jurisdiction, in the sense of power and authority, to modify, revise or reverse the judgment, regardless of the magnitude of the error in the final judgment. Avenue Plaza, L.L.C., 676 So.2d at 1079; Tolis, 660 So.2d at 1206.
The issue of Batson's entitlement to medical expenses related to the flexion contractures claim was conclusively adjudicated in the April 15, 1997 judgment, wherein plaintiffs were awarded $322,169.95 for past medical expenses for Batson's flexion contractures. On November 5, 2003, the trial court's April 15, 1997 judgment on the merits became final and definitive as to all portions of the judgment, when the Supreme Court denied writs with regard to the final issue on appeal regarding the flexion contractures claim. Thus, as of November 5, 2003, the April 15, 1997 judgment acquired the authority of a thing adjudged and was not subject to modification, revision or reversal on this issue, or any other issue.
The State may not now raise the issue of the propriety of the past medical expense award, where it failed to do so in the many years that this matter was pending on appeal and where the judgment has become final and definitive and acquired the authority of a thing adjudged. This assignment of error lacks merit.
In its second assignment of error, the State argues that the trial court erred in failing to find that plaintiffs' acceptance of payment of the Medicaid and Medicare liens in the Partial Satisfaction of Judgment amounted to a waiver of its claims for additional payments of medical expenses. In support of its argument, the State relies upon the statement in the Satisfaction of Judgment that all Medicaid and Medicare liens had been paid. That portion of the Satisfaction of Judgment states, as follows:
Plaintiffs herein aver and represent to this court and the State of Louisiana that all Medicaid and Medicare liens have been extinguished and there are no other outstanding liens pending in any way related to her claim for damages for decubitus ulcers, sepsis, and flexion contractures made by Deborah Batson arising out of or related to her hospitalization at the former South Louisiana Medical Center. In the event that there are any such liens outstanding, Teresa Batson Hensley, as representative of the estate of Deborah L. Batson, agrees to defend and hold the State of Louisiana harmless for any such claims and obligations in consideration of the payment referenced herein. (Emphasis added.)
We find no merit to the State's attempted interpretation of the above language. Clearly, by this language, plaintiffs acknowledged only that the Medicare and Medicaid liens had been satisfied. In no way does this language suggest or support a finding that plaintiffs waived their rights to collect the additional sums awarded or owed under the judgment. See generally Martin v. Elmwood Medical Center, 97-826 (La.App. 5th Cir.1/27/98), 707 So.2d 1287, 1292, (wherein the court held that a release agreement clearly stated that the amount tendered was in satisfaction of the judgment and did not compromise any further claim the plaintiff had against the defendant).
Indeed, in the partial satisfaction of judgment, plaintiffs specifically requested that the clerk of court for the Thirty-second Judicial District Court be directed *897 to enter a partial cancellation of the April 15, 1997 judgment, but only as it pertained to the satisfaction of the statutory caps on damages for sepsis and decubitus ulcers. Moreover, plaintiffs further stated in the Partial Satisfaction of Judgment as follows:
This partial satisfaction of judgment does not in any way discharge the State of Louisiana from the estate's claim for flexion contractures and the damages awarded by this court on April 15, 1997. The portion of the judgment pertaining to the flexion contracture damages hereby remains in full force and effect and is not affected by this judgment. (Emphasis in original).
For these reasons, we also find no merit to the State's contention that plaintiffs' "acceptance" of payment of sums to satisfy the Medicare and Medicaid liens and execution of the Partial Satisfaction of Judgment somehow constituted a waiver of plaintiffs' rights to collect the sums awarded for Batson's flexion contractures claim in the April 15, 1997 final and definitive judgment.
In rejecting these arguments, we further note that we are troubled by the fact that the State has continuously resisted payment of the sums awarded to plaintiffs herein in this tragic case, despite judicial pronouncement of its obligation to plaintiffs. With regard to enforcement of judgments rendered against the State, we recognize that LSA-Const. art. XII, § 10(C) governs and limits a private citizen's ability to collect a judgment against the State. Indeed, this constitutional provision provides that no judgment against the State shall be payable except from funds appropriated therefor by the legislature. LSA-Const. art. XII, § 10(C). Nonetheless, "[i]n effect, section 10(C) is aimed at protecting the public fisc and seeks to avoid governmental priorities being upset by the payment of substantial money judgments. It is not aimed at limiting the courts in a general manner in dealing with the [S]tate." Lee Hargrave, "Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974, 43 La. Law Rev. 647, 655 (1983) (emphasis added). We further observe that this constitutional scheme for payment of judgments against the State was not designed to allow the paying authority to challenge before the legislature the legal correctness of sums provided for in a final and definitive judgment of the courts of this state. To hold otherwise would render judgments against the State meaningless.[5]
Accordingly, the State's second assignment of error also lacks merit.

CONCLUSION
For the above and foregoing reasons, the April 22, 2005 judgment of the trial court, declaring that South Louisiana Medical Center and the State of Louisiana, through the Department of Health and Human Resources had not satisfied the court's April 15, 1997 judgment and that the defendants owe the amount of $322,169.05 as awarded in the April 15, 1997 judgment for medical expenses related to the flexion contractures claim, is affirmed. Costs of this appeal in the amount of $6,687.50 are assessed equally against South Louisiana Medical Center and the State of Louisiana, through the Department of Health and Human Resources.
AFFIRMED.
McDONALD, J., concurs.
NOTES
[1] The plaintiffs named in the judgment were Batson and her parents, Billy M. Batson and Eula Maye Batson. Subsequently, Batson died as a result of her injuries, and her father, Billy M. Batson, was substituted as party plaintiff. Batson v. South Louisiana Medical Center, 98-0038R (La.App. 1st Cir.12/22/00), 778 So.2d 54, 56 n. 1, writ denied, XXXX-XXXX (La.5/11/01), 792 So.2d 740.
[2] Plaintiffs were paid $1,636,949.91 pursuant to their settlement agreement with these defendants. Batson II, 98-0038R at p. 23 n. 6, 778 So.2d at 66 n. 6.
[3] This court also held that if, in fact, the trial court determined that the physical therapy defendants were state health care providers, then the State would be relieved of its liability to plaintiffs for the flexion contractures claim alone, as Batson would have already received the statutory cap for that claim from a qualified state health care provider. However, we further recognized that if the physical therapy defendants were found not to be qualified state health care providers, no reduction would be warranted. This finding was based on the trial court's indication in the record that it had specifically held that, even after reducing the flexion contractures award by the percentage of fault attributable to the settling physical therapy defendants, the portion of Batson's general damages for which SLMC and the State would be liable exceeded $500,000.00. Thus, the trial court had already taken into consideration a reduction of the State's liability to plaintiffs by the proportionate share of fault of the physical therapy defendants in specifying the amounts it was awarding. Batson II, 98-0038R at p. 27 n. 8, 778 So.2d at 68 n. 8.
[4] As the State correctly notes, in Terrell, the Second Circuit Court of Appeal held that a plaintiff in a personal injury action may not recover as damages the amounts written off or contractually adjusted under the Medicaid program because neither the plaintiff nor Medicaid had incurred those expenses that were written off. Terrell, 759 So.2d at 1031. Additionally, in Suhor, the Fourth Circuit Court of Appeal held that, because the plaintiff could not be allowed to recover a non-existent debt and because recovery would be a "windfall" to the plaintiff, the plaintiff's claim for medical expenses classified as Medicare write-offs was properly dismissed. Suhor, 770 So.2d at 427.

Moreover, as the State acknowledges in its appellate brief, the Louisiana Supreme Court in Bozeman v. State, XXXX-XXXX (La.7/2/04), 879 So.2d 692, 704-705, has now specifically held that a plaintiff is unable to recover Medicaid write-off amounts, in that no consideration is given by a patient to obtain Medicaid benefits. However, noting that Medicare is financed by compulsory payroll taxes, the Supreme Court recognized therein that a plaintiff is entitled to recover the "write-off" amount where the plaintiff's patrimony has been diminished in some way in order to obtain the collateral source benefits. Notably, the State concedes in its brief that vis-à-vis Medicare write-offs, given the holding in Bozeman, "it is arguable that [plaintiffs] may have been entitled to the difference between the $177,832.20, which represents the full amount of the Medicare lien and the $78,616.43 that the State paid in satisfaction of that lien." (Emphasis added). Nonetheless, the State continues to argue that the trial court erred in ruling that it had failed to satisfy the April 15, 1997 judgment, arguing that it had satisfied its obligation for the medical expenses award at least with regard to the amount of the Medicaid lien.
[5] However, we are unable to consider an award of sanctions in this matter because plaintiffs did not answer the appeal or request sanctions.