NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-392

DERRICK P. WILLIAMS

VERSUS

LAFAYETTE CITY-PARISH CONSOLIDATED

GOVERNMENT, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20183932
HONORABLE ROYALE L COLBERT, JR., DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Jonathan W. Perry, and Sharon Darville Wilson, Judges.

AFFIRMED AS AMENDED.

Bryan D. Scofield
James T. Rivera
Jessica W. Marchand
Scofield & Rivera, LLC
100 E. Vermilion, Suite 301
Lafayette, LA 70501
(337) 235-5353
COUNSEL FOR DEFENDANTS-APPELLANTS:
    Jacob Belaire
    Lafayette City Parish Consolidated Government

**James P. Ryan**
**Morrow, Morrow, Ryan, Bassett & Haik**
**P. O. Drawer 1787**
**Opelousas, LA 70571-1787**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
   **Derrick P. Williams**

**PICKETT, Judge.**

The defendants, Lafayette City-Parish Consolidated Government and Jacob Belaire (collectively referred to throughout as "Lafayette"), appeal the judgment of the trial court which awarded damages to the plaintiff, Derrick Williams, for damages sustained in a motor vehicle accident following a bench trial.

## FACTS

On June 22, 2017, Jacob Belaire, an employee of Lafayette, was driving a backhoe while in the course and scope of his employment on a public highway. Mr. Williams was following the backhoe. Mr. Belaire executed a U-turn, and Mr. Williams's vehicle struck the tire of the tractor. Mr. Belaire admitted he did not see Mr. Williams's vehicle when he made the U-turn.

Mr. Williams filed suit against Lafayette and Mr. Belaire. Lafayette stipulated full liability for the accident. The matter proceeded to a trial before the trial court on the issue of damages. Following the trial, the trial court awarded the following damages to Mr. Williams: $300,000 in general damages, $302,000.92 for past medical expenses, and $83,462.14 for future medical expenses. Lafayette appeals that judgment.

## ASSIGNMENTS OF ERROR

The appellants assert four assignments of error:

1.  The District Court erred in awarding $302,000.92 in past medical expenses because the parties stipulated that the past medical charges totaled $301,188.33.

2.  The District Court erred in awarding Plaintiff the amount charged for medical expenses, instead of the amounts actually paid for medical expenses.

3.  The District Court erred in concluding that Plaintiff will need a future low back surgery on a more probable than not basis. Therefore, the District Court erred in awarding future medical expenses and the general damage award should be reduced accordingly.

4.    The District Court erred in concluding that the need for surgery was caused by the accident in question, instead of the natural progression of preexisting degenerative conditions. Therefore, the District Court's award for past medical expenses and general damages should be reduced accordingly.

## DISCUSSION

By their first assignment of error, Lafayette contends the trial court erred in awarding $302,000.92 in past medical expenses. In brief, Mr. Williams concedes that the parties stipulated that the full costs of Mr. Williams's past medical expenses totaled $301,188.33. We will therefore amend the award of past medical expenses to the stipulated amount.

In its second assignment of error, Lafayette contends that Mr. Williams should only recover what his insurance company paid for past medical expenses, rather than the amount he was billed for the treatment he received. In addition to the stipulation that Mr. Williams's medical bills totaled $301,188.33, the parties stipulated that the amount paid by Mr. Williams or his health insurance company is $82,299.67. Lafayette argues that the collateral source rule should not apply and Mr. Williams should only be allowed to recover amounts actually paid by private insurance, not the amounts that were discounted because of the agreements between the health insurer and health care providers.

In *Bozeman v. State*, 03-1016, p. 9 (La. 7/2/04), 879 So.2d 692, 698, the supreme court defined the collateral source rule:

> Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. [*Louisiana Dep't of Transp. and Dev. v.*] *Kansas City Southern. Ry.*, [02–2349 (La.5/20/03), 846 So.2d 734,] 739. Hence, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance. *Id.,* at 739–740. As

2

a result of the collateral source rule, the tortfeasor is not able to benefit from the victim's foresight in purchasing insurance and other benefits. *Suhor v. Lagasse,* 2000–1628 (La.App. 4 Cir. 9/13/00), 770 So.2d 422, 423.

The supreme court adopted the "benefit of the bargain" approach in *Bozeman*, explaining that it embraced the reasoning of the California Supreme Court in *Helfend v. S. California Rapid Transit Dist.*, 2 Cal.3d 1, 84 Cal.Rptr. 173, 465 P.2d 61, 66–67 (1970):

> The **collateral source rule** expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. Courts consider insurance a form of investment, the benefits of which become payable without respect to any other possible source of funds. If we were to permit tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance.

*Bozeman*, 879 So.2d at 704 (emphasis added).

There is no dispute in this case that Mr. Williams paid premiums for healthcare insurance. Two cases cited by Lafayette to support its argument involve plaintiffs who received workers' compensation benefits (*Simmons v. Cornerstone Inv., LLC,* 18-735 (La.5/8/19), 282 So.3d 199) and whose attorneys negotiated for lower charges (*Hoffman v. 21st Century N. Am. Ins. Co.*, 14-2279 (La. 10/2/15), 809 So.3d 702). In each of these cases, the plaintiffs did not diminish their patrimony to receive the benefit of a lower cost for medical services. Thus, these cases do not support Lafayette's assignment or error.

A third case cited by Lafayette, *Thomassie v. Amedisys La Acquisitions, LLC*, 20-1229 (La. 1/20/21), 308 So.3d 1165, actually supports the judgment rendered by the trial court. In *Thomassie*, the trial court and the court of appeals held that payments made by TRICARE, a federally-subsidized supplemental insurance offered to active and retired members of the military, was not a collateral

3

source. The supreme court reversed the lower court and found that the amount paid by TRICARE was subject to the collateral source. In this case, Mr. Williams premiums were subsidized by the federal government as a result of the Affordable Care Act.

In *Thomassie*, the Patients' Compensation Fund (PCF) also argued that because it was not the actual tortfeasor, the goal of tort deterrence was not furthered by the application of the collateral source rule. The supreme court dismissed that argument:

> "The major policy reason for applying the collateral source rule to damages has been, and continues to be, tort deterrence. The underlying concept is that tort damages can help to deter unreasonably dangerous conduct. Tort deterrence has been an inherent, inseparable aspect of the collateral source rule since its inception over one hundred years ago." *Bozeman*, 879 So. 2d at 700. The collateral source rule applied to these facts has a deterrent effect. The Patient Compensation Fund intervened in place of the tortfeasor Amedisys. The Patient Compensation Fund's resources derive from annual charges on healthcare providers, such as Amedisys. These annual charges are calculated by an actuarial study that considers the healthcare provider's past and prospective loss and expense experience. La. R.S. 40:1231.4(A)(2). The negative financial effects of adverse claims motivates healthcare providers like Amedisys to avoid unreasonably dangerous conduct. Applying the collateral source rule here furthers the policy goal of tort deterrence.

*Thomassie*, 308 So.3d at 1165.

Here, Lafayette, also argues that it is not the actual tortfeasor – it is only vicariously liable for the tort of its employee, thus tort deterrence is not furthered by requiring payment of the full amount of the medical bills. We find an employer's relationship to its employee supports the application of the collateral source rule just as the supreme court found PCF's relationship to a qualified healthcare provider does. As the supreme court found in *Thomassie*, we find that Mr. Williams diminished his patrimony to obtain insurance benefits, and the

4

collateral source rule applies to make inadmissible the amounts paid by Mr. Williams' private insurance coverage.

In its third assignment of error, Lafayette argues the trial court erred in awarding future medical expenses for surgery. Lafayette claims that the evidence presented by Mr. Williams's treating physician does not support a finding that Mr. Williams will need back surgery in the future. This court set forth the standard of reviewing an award of future medical expenses in *Brossett v. Howard*, 08-535, pp. 12-14 (La.App. 3 Cir. 12/10/08), 998 So.2d 916, 928, *writt denied*, 09-0077 (La. 3/6/09), 3 So.3d 492:

> Future medical expenses are reviewed by an appeals court pursuant to the manifest error standard of review. *Armentor v. Safeway Ins. Co.,* 07–805 (La.App. 3 Cir. 12/19/07), 972 So.2d 444 (citing *Cormier v. Colston,* 05–507 (La.App. 3 Cir. 12/30/05), 918 So.2d 541). A plaintiff seeking an award for future medical expenses is required to establish those expenses "with some degree of certainty." *Armentor,* 972 So.2d at 448. The plaintiff is required to show that it is more probable than not that the expenses will be incurred. *Id.* We have held that "[a]wards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost." *Id.* Moreover, as we stated in *Veazey v. State Farm Mut. Auto Ins. Co.,* 587 So.2d 5, 8 (La.App. 3 Cir.1991), "an award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award."

The trial court heard evidence from Mr. Williams's treating physician, Dr. Jayme Trahan, testified that he determined that it is more probable than not that Mr. Williams will need additional surgery due to adjacent segment disease. He explained his reasoning as follows:

> Mr. Williams is 40 years old. He had a two-level lumbar fusion surgery. The way that I talk to my patients in layman's terms is if you have five lumbar segments, and let's say you – so let's say you have five people lifting a heavy load. If two of those people are removed from lifting that heavy load, then that means there are only three left to maintain that same bearing of the load. The one closest to the people that left will bear the most load. In Mr. Williams' case, he had a 4-5, 5-1 fusion. That's [sic] means L3-4 is sitting next to them, and

that is going to be the level that will break down on a more probable than not basis within his lifetime, assuming Mr. Williams lives to be the average age of a male.

Under examination, Dr. Trahan explained that there were no studies that perfectly corresponded to Mr. Williams's situation. Instead, he must extrapolate from the data that is available in journals. He also testified that in determining if surgery is necessary, the doctor will look not just to radiographic findings, but also to symptoms of the patient. He further testified:

[I]f we can declare that a disc breaks down on an average of three to five percent per year, you can extrapolate on a more probable than not basis. If Mr. Williams lives 15 to 17 years, he 's going to reach that 50th – that 50 percentile to declare probability. And he's going to cross the threshold.

Dr. Trahan also testified about his expertise and experience as a surgeon. He performs one to two lumbar fusions per week, and one to two of those surgeries are because of adjacent segment pathology. Dr. Trahan clearly set forth the reasons he reached the conclusion that Mr. Williams would need future surgery. Despite assertions in Lafayette's brief, Dr. Trahan did offer support for his medical opinion.

Lafayette claims that Dr. Trahan's findings are not based on peer-reviewed studies. It instead argues that its expert, Dr. Chambliss Harrod, has written multiple peer-reviewed articles about adjacent segment pathology. Thus, his testimony should be given more weight than Dr. Trahan. Dr. Harrod testified that it is not more probable than not that Mr. Williams will need future surgery. Dr. Harrod cited the same statistics as Dr. Trahan, but only looked ten years into the future to determine that it was unlikely that Mr. Williams would need surgery. He also explained that a finding of adjacent segment pathology does not necessarily indicate that surgery would be necessary.

6

A reviewing court will not disturb a factual finding of the trial court in the absence of manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So. 2d 880, 882 (La.1993). Having reviewed the record in its entirety, we find the trial court had a reasonable basis for its conclusion that Mr. Williams more probably than not needed future surgery. We find no merit to this assignment of error.

Likewise, we find that the evidence presented to the trial court supports its finding that the lumbar surgery performed on Mr. Williams was causally related to the accident. There is testimony in the record from both Dr. Trahan and Dr. Harrod that the impact from the accident aggravated Mr. Williams's degenerative condition in his back. This forms a reasonable basis for the trial court's finding.

## CONCLUSION

The award for past medical expenses is amended to $301,188.33. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Lafayette City-Parish Consolidated Government and Jacob Belaire in the amount of $13,697.32.

**AFFIRMED AS AMENDED.**