38 So.3d 963 (2010)
AUDUBON ORTHOPEDIC AND SPORTS MEDICINE, APMC
v.
LAFAYETTE INSURANCE COMPANY.
Audubon Orthopedic and Sports Medicine, APMC
v.
Lafayette Insurance Company.
Nos. 2009-CA-0007, 2009-CA-0916.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 2010.
*967 J. Douglas Sunseri, Svetlana Crouch, Nicaud & Sunseri, L.L.C., Metairie, LA, for Plaintiff/Appellee.
Howard B. Kaplan, Robert A. McMahon, Jr., David M. McDonald, Bernard, Cassisa, Elliott & Davis, A PLC, Metairie, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
PATRICIA RIVET MURRAY, Judge.
These consolidated appeals by Lafayette Insurance Company concern two of three judgments rendered by the trial court based upon a jury verdict that found Lafayette was liable to its insured, Audubon Orthopedic and Sports Medicine, for breach of its business interruption policy. Lafayette contends that the trial court committed legal error by issuing the second "amended" judgment and the third judgment, which was limited to the issue of attorney fees. Audubon disputes these contentions and answers the appeal seeking modifications of the second and third judgments. For the reasons that follow, we affirm in part, amend in part and reverse in part.

FACTS AND PROCEEDING BELOW
On August 15, 2006, Audubon filed the instant suit alleging that Lafayette failed to fully pay Audubon's business interruption claim for its two locations, one in uptown New Orleans and one in Metairie, which were damaged by Hurricane Katrina. Audubon sought compensatory damages for breach of contract, as well as penalties under La. R.S. 22:1220 and 22:658[1] for Lafayette's failure to pay timely.
The matter was tried to a jury in Civil District Court in Orleans Parish on October 16-18, 2007. The jury found Lafayette owed Audubon both damages and statutory penalties for Lafayette's breach of its duties under the policy, returning its verdict on a form that consisted of 22 separate interrogatories. The trial concluded with the trial judge reading into the record the jury's responses to each interrogatory. Following the trial, Lafayette submitted a proposed judgment based upon the jury's verdict. On October 31, 2007, the trial court signed the judgment proposed by Lafayette, which awarded the following: (1) Business income loss in the amounts of $240,819.58[2] for Audubon's uptown location and $27,071.07 for its Metairie location; (2) Statutory penalties under La. R.S. 22:658 of twenty-five percent (25%) of *968 the above amounts of business income loss; and (3) Statutory penalties under La. R.S. 22:1220 of $5,000.00 for each location. On November 15, Audubon filed a "Motion for New Trial and/or Amendment of Judgment," limited to two issues: (1) the trial court's failure to award appropriate damages/penalties under La. R.S. 22:1220; and (2) the trial court's failure to award attorney fees; Audubon attached as an exhibit to the motion its own proposed judgment. On November 21, Lafayette tendered payment of the October 31 judgment including judicial interest through November 23, which Audubon accepted subject to its right to appeal.
The hearing on Audubon's motion for new trial and/or amendment of judgment took place as scheduled on December 7, 2007,[3] and the trial court took the matter under advisement. Approximately nine months later, without ever ruling on the motion for new trial, the trial court on September 30, 2008, issued a "Judgment Vacating Previous Judgment and Entering New Judgment." In that judgment, rendered without written reasons, the trial court stated that it had been "presented with and mistakenly [had] signed a previous judgment." The September 30 judgment [hereinafter referred to as the "second" judgment] vacated the original judgment in its entirety. In the second judgment, the court awarded Audubon the same amounts of business income loss as in the original judgment but completely changed the penalties assessed against Lafayette. The second judgment eliminated the penalties assessed under R.S. 22:658; eliminated the penalty of $5,000.00 per location assessed under R.S. 22:1220; and instead awarded damages under R.S. 22:1220 in the amounts of $175,000.00 for the uptown location and $20,000.00 for the Metairie location. In addition, although the original judgment did not include an award of attorney's fees, the second judgment awarded Audubon "reasonable attorney's fees in the amount of $5,000.00."
On October 7, 2008, Audubon filed a motion for new trial seeking an increase in the amount of attorney's fees awarded by the second judgment. Prior to the hearing on Audubon's motion, Lafayette filed a suspensive appeal of the second judgment in this court. After hearing Audubon's motion, the trial court took the matter under advisement. On April 20, 2009, the trial court signed a judgment [hereinafter referred to as the "third" judgment] increasing the award of attorney's fees from $5,000.00 to $75,000.00. Lafayette suspensively appealed the third judgment, and this court subsequently consolidated the two appeals. Audubon filed answers in both appeals, which are now consolidated.

ISSUES
Lafayette contends that the trial court had no authority to issue the second or the third judgment, arguing that these should be vacated and the original judgment reinstated. Alternatively, Lafayette argues that the trial court committed legal error because the second judgment does not accurately reflect the jury's verdict and improperly awards statutory damages/penalties that are not consistent with the law. Finally, Lafayette argues that both the second and third judgments are erroneous because there is no legal basis for an award of attorney's fees in this matter. Besides refuting Lafayette's contentions, Audubon answers the appeal and asserts three arguments of its own, namely: (1) that the business income loss awarded in the second judgment should be increased; (2) that the $75,000.00 in attorney's fees awarded in the third judgment should be *969 increased; and (3) that Lafayette should be ordered to pay all costs of the trial and appeal.

DISCUSSION

Trial Court's Authority to Render Second Judgment
As a threshold issue, we first address Lafayette's contention that, under the circumstances presented in this case, the trial court lacked authority to render the second, or "amended," judgment. La. C.C.P. art. 1951 sets forth the circumstances under which a trial court may amend a final judgment. It states:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or the motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
As this court has recognized, any amendment that adds to, subtracts from, or in any way affects the substance of a judgment, is considered a substantive amendment. Palmer v. Leclercq, 07-0604, p. 6 (La.App. 4 Cir. 9/24/08), 996 So.2d 21, 24. It is well established that Article 1951 does not authorize substantive amendments to final judgments. Denton v. State Farm, 08-0483, p. 7 (La.12/12/08), 998 So.2d 48, 52 (citing Bourgeois v. Kost, 02-2785 (La.5/20/03), 846 So.2d 692). To alter the substance of a judgment, the proper recourse is a timely motion for new trial, an action for nullity, or a timely appeal. Palmer v. Leclercq, supra.[4]
In the instant case, there is no question that the second judgment, which vacated the first judgment in its entirety and awarded completely different penalties as well as attorney's fees, altered the substance of the original judgment. Audubon does not dispute this fact. Instead, it argues that under the peculiar circumstances of this case, the trial court had the authority to issue the amended judgment because the original judgment was signed in error.
The pertinent facts are not in dispute and are confirmed by the record. On October 26, Lafayette submitted a proposed judgment based upon the jury verdict, along with a "Motion to Make Attached Proposed Judgment the Judgment of the Court." On October 31, the trial judge signed Lafayette's proposed judgment and also signed an order attached to the proposed judgment ordering the plaintiff to show cause on December 7 as to why Lafayette's motion should not be granted. On November 6, the clerk of the district court issued a "Notice of Signing of Judgment." On November 8, Audubon filed "Plaintiff's Memorandum in Opposition to Defendant's Motion to Make Attached Proposed Judgment the Judgment of the Court," attaching its own proposed judgment as an exhibit. In addition, on November 15, Audubon timely filed a "Motion for New Trial and/or Amendment of Judgment" from the October 31 judgment, again attaching its own proposed judgment as an exhibit.[5] The parties' motions were *970 heard by the trial court on December 7, 2007, but the record contains no transcript of that hearing. At the conclusion of the hearing, the trial court took the matter under advisement. Approximately nine months later, without expressly granting the plaintiff's motion for new trial, the trial court rendered the second judgment, indicating that the court had been "presented with and mistakenly [had] signed" the prior judgment.
Except for the existence of a timely-filed motion for new trial, the facts pertinent to determining the validity of the second judgment in the instant case are indistinguishable from those in Bourgeois v. Kost, supra. In Bourgeois, a personal injury suit arising out of an automobile accident, the trial court invited both parties to submit proposed judgments at the conclusion of the bench trial. On November 2, 2001, the trial court signed a document entitled "Defendants' Proposed Final Judgment," which dismissed the plaintiffs' claims, and the clerk of court issued notice of judgment shortly thereafter. Approximately two months later, in January, the trial court signed a second judgment ruling in favor of the plaintiffs and awarding them damages; at the same time, the court issued an order stating it had inadvertently signed defendants' proposed judgment, vacating the original judgment, and replacing it with the second judgment. On appeal, defendants argued the trial court had no authority to substantively change the original, final judgment. The Supreme Court agreed, noting that, even if a judgment has been signed in error, once signed, it cannot be altered, amended or revised by the judge who rendered it except in the manner provided by law. 02-2785, p. 7, 846 So.2d at 696. Therefore, the Supreme Court found the second judgment to be an absolute nullity, and reinstated the original judgment. Id., p. 8, 846 So.2d at 696.
Nevertheless, we find that the plaintiffs' assertion of a timely-filed motion for new trial triggers a different result in the instant case. In Lousteau v. K-Mart Corp., 03-1182 (La.App. 5 Cir. 3/30/04), 871 So.2d 618, writ denied, 876 So.2d 835 (La.6/25/04), a slip and fall case, the trial court initially entered judgment in favor of K-Mart, dismissing the plaintiff's case. Then, a few days later, the court vacated that judgment, noting it had been signed in error, and subsequently rendered a new judgment finding K-Mart liable and awarding the plaintiff damages. On appeal, the Fifth Circuit upheld the second judgment, distinguishing Bourgeois on the basis that in Lousteau, the trial court had vacated its initial judgment within the time period designated for filing an application for new trial. Noting that La. C.C.P. art. 1971 allows the trial court to grant a new trial on its own motion, the Fifth Circuit inferred that the trial court had done so and therefore had properly vacated the original judgment, concluding: "The recordation of the trial court that it signed the first judgment in error, within the time frame permitted for granting a new trial, persuades us that the [second] judgment is not invalid as an impermissible amended judgment." 03-1182, p. 3, 871 So.2d at 620.
The facts of the instant case present an even stronger basis for distinction from Bourgeois than those of Lousteau. Whereas there was no motion for new trial ever filed in Lousteau, in the instant case the trial court had heard and taken under advisement the plaintiffs' timely-filed motion *971 for new trial at the time the court rendered a new judgment that expressly vacated its original judgment. Moreover, the second judgment altered the original only with respect to the two legal issues (damages/penalties under La. R.S. 22:1220, and attorney's fees) that were raised by the plaintiffs in their motion for new trial. Although the trial court did not expressly grant the motion for new trial, we find that, under these circumstances, the court impliedly granted the motion when it issued a substantively different judgment that expressly vacated the original judgment.[6] Accordingly, we conclude that the second judgment did not constitute an impermissible amendment of the first one. We therefore reject Lafayette's argument in this regard.

Statutory Penalties
Lafayette next argues that the second judgment fails to comply with the law insofar as the award of statutory damages and penalties is concerned; in addition, appellant contends that the amounts awarded do not accurately reflect the jury's verdict and are not supported by the evidence in the record. As previously stated, the second judgment eliminated the $10,000.00 penalty ($5,000.00 per location) that had been awarded under R.S. 22:1220 and instead awarded damages under that statute in the amounts of $175,000.00 for the uptown location $20,000.00 for the Metairie location; the second judgment also eliminated the original judgment's assessment under R.S. 22:658 of a penalty of twenty-five percent (25%) of the business income loss found to be due under the insurance policy.
The interplay between these two statutes penalizing insurer conduct has been the subject of extensive jurisprudence, particularly in the aftermath of Hurricane Katrina. In general, R.S. 22:658, part of a section of the Insurance Code dealing with the payment of claims, sets forth specific rules regarding an insurer's payment of various types of claims; whereas R.S. 22:1220 appears in the section of the Code concerning insurer fraud and unfair trade practices. When, as in the instant case, an insurer is found to have arbitrarily and capriciously failed to pay timely the amount it owes under a policy covering damage to property, the insurer's failure is, in many cases, covered by both statutes.
For several years prior to August 15, 2006, R.S. 22:658 provided, in pertinent part:
A. (1) All insurers issuing any type of contract ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * * * *
(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim... within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.

*972 * * * * *
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured ... or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.
Pursuant to La. Acts 2006, No. 813, effective August 15, 2006, section B(1), as quoted above, was amended to increase the twenty-five percent (25%) penalty to fifty percent (50%) of the amount found to be due plus "reasonable attorney fees and costs."
The other potentially applicable penalty statute, R.S. 22:1220, provided, in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * * * *
(4) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater....
A plain reading of the two statutes reveals that an insurer who arbitrarily, capriciously, or without probable cause fails to pay the amount due its insured within sixty days of receiving satisfactory proof of loss has violated both R.S. 22:658 B(1) and R.S. 22:1220 B(4). Recognizing that, except for the time period within which the insurer must pay, the conduct prohibited by the two statutes is "virtually identical," the Louisiana Supreme Court has held that the offending insurer cannot be penalized under both statutes; therefore, whichever statute imposes the greater penalty supercedes the other statute such that the greater penalty is applied. Calogero v. Safeway Ins. Co. of Louisiana, 99-1625, pp. 6-7 (La.1/19/00), 753 So.2d 170, 174; see also Neal Auction Co. v. Lafayette Ins. Co., 08-0574, p. 14 (La.App. 4 Cir. 4/29/09), 13 So.3d 1135, 1144-45. This rule obviously compels the trial court to first determine the amount of the penalty that would be assessed under each statute given the facts of the individual case.
Once the finder of fact has determined that the insurer has arbitrarily and capriciously failed to pay the amount due under the insurance policy within thirty days of receiving satisfactory proof of loss, *973 and further has determined what amount was due that was not so paid, the assessment of the percentage penalty set forth in R.S. 22:658 is mandatory. Steadman v. Pearl Assur. Co., 242 La. 84, 134 So.2d 884, 886-87 (1961); Ibrahim v. Hawkins, 02-0350, p. 4 (La.App. 1 Cir. 2/14/03), 845 So.2d 471, 476. Because the legislature amended R.S. 22:658 in 2006 to increase the penalty from twenty-five percent to fifty percent of the amount due plus reasonable attorney fees, the finder of fact may also have to determine whether the plaintiff's cause of action arose before or after the effective date of the amendment in order for the trial court to apply the correct penalty. In Sher v. Lafayette Ins. Co., 07-2441, pp. 15-16 (La.4/8/08), 988 So.2d 186, 199, the Louisiana Supreme Court held that the plaintiff's cause of action for penalties under R.S. 22:658 arises when the insurer's obligation to pay occurs, which is thirty days after receipt of satisfactory proof of loss.[7] However, in a jury trial, once the jury has made these factual findings, it is the role of the judge to apply the law as set forth in R.S. 22:658 to determine the amount of the penalty that would be assessed under that statute.
The trial court's determination of the amount that would be assessed under R.S. 22:1220 is somewhat more complex. R.S. 22:1220 provides for the mandatory assessment against the insurer of any "damages sustained as a result of the breach," as well as the discretionary assessment of penalties "in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." See Calogero v. Safeway Ins. Co. of Louisiana, 99-1625, pp. 6-7 (La.1/19/00), 753 So.2d 170, 174; Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360, pp. 5-6 (La.12/3/03), 860 So.2d 1112, 1117; Kozina v. Zeagler, 94-413, p. 7 (La.App. 5 Cir. 11/29/94), 646 So.2d 1217, 1221; Ibrahim v. Hawkins, 02-0350, p. 6 (La.App. 1 Cir. 2/14/03), 845 so.2d 471, 477-78. The amount of penalties that can be awarded under this statute is based upon the damages sustained by the breach, not the damages claimed or awarded; therefore, if there are no damages proven as a result of the insurer's breach of its duties, the maximum penalty that the trial court can award under R.S. 22:1220 is $5,000.00. Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360, p. 9 (La.12/3/03), 860 So.2d 1112, 1119; Brinston v. Automotive Cas. Ins. Co., 96-1982, p. 7 (La.App. 4 Cir. 12/3/97), 703 So.2d 813, 817; Hollier v. State Farm Mut. Auto. Ins. Co., 01-0592, pp. 5-6 (La.App. 3 Cir. 10/31/01), 799 So.2d 793, 797; Hall v. State Farm Mut. Auto. Ins. Co., 94-867, pp. 7-8 (La.App. 3 Cir. 5/31/95), 658 So.2d 204, 206.
Thus, for the trial court to properly apply R.S. 22:1220, the following factual issues must first be determined:
(1) Did the insurer arbitrarily, capriciously, or without probable cause fail to pay any amount due the insured under the policy within sixty days of the insurer's receipt of satisfactory proof of loss?
(2) If the answer to the preceding question is yes, did the insurer's failure to pay this amount within sixty days result in damages to the insured?
(3) If the answer to the preceding question is yes, what amount of damages resulted from the insurer's breach of *974 its duty to pay, and therefore should be assessed against the insurer?
(4) If an amount of damages has been listed in response to the previous question, what percentage of this amount, from zero percent (0%) to two hundred percent (200%), should be assessed against the insurer as a penalty for its breach considering the facts of this particular case?
Once the finder of fact has decided these issues, the trial court must award the plaintiff, in addition to the amount found to be due under the policy, any damages found to have resulted from the insurer's breach. If no damages are found to have resulted from the breach, the trial court may, in its discretion, assess against the insurer any amount up to $5,000 as a penalty; conversely, if damages as a result of the breach have been awarded, the trial court may, in its discretion, also award a penalty of up to twice the amount (200%) of those damages. Finally, the trial court must compare the amount of penalties (not including attorney fees)[8] that would be assessed under R.S. 22:658 with the amount of penalties that would be assessed under R.S. 22:1220, and then award the higher of the two amounts.
Lafayette contends that the trial court failed to correctly apply the law as discussed above when it awarded damages pursuant to R.S. 22:1220 in the amounts of $175,000 and $20,000, respectively, in the second judgment. We agree.
In the instant case, the jury found that Lafayette arbitrarily, capriciously or without probable cause failed to pay Audubon the amount of business income loss sustained at both locations and due under the Lafayette policy within thirty days after receipt of satisfactory proof of loss.[9] The jury also determined the amounts that should have been paid under the policy were $240,819.58 for the uptown location and $27,071.07 for the Metairie location. Then, the jury was asked, with respect to each location, a series of four questions that obviously related to the determination of damages and penalties pursuant to R.S. 22:1220. These interrogatories, and the jury's responses, were as follows:
8. Did Lafayette Insurance Company fail to pay Audubon any amounts owed for loss at the uptown location within 60 days of satisfactory proof of loss? Response: YES
9. Do you find by a preponderance of the evidence that Lafayette Insurance Company was arbitrary, capricious or without probable cause in failing to pay any amount owed for loss at the uptown location within 60 days of satisfactory proof of loss? Response: YES
10. Do you find by a preponderance of the evidence that Audubon Orthopedic suffered actual damages as a result of Lafayette Insurance Company acting in an arbitrary or capricious manner or without probable cause in its failure to pay losses sustained at the uptown location? Response: NO
11. If you answered "YES" on any of the Questions numbered 8, 9 or 10, then *975 what amount of damages do you find Audubon Orthopedic suffered as a result of Lafayette Insurance Company acting in an arbitrary or capricious manner or without cause in its failure to pay losses sustained at the uptown location? Response: $175,000.00
The identical questions were repeated in Interrogatory Nos. 19, 20, 21 and 22 with respect to the Metairie location, and the jury gave exactly the same answers, except that its response to the final Interrogatory, No. 22, was "$20,000.00."
According to the express language of R.S. 22:1220 and the jurisprudence interpreting it, the jury's finding (in response to Interrogatory Nos. 10 and 21) that there were no actual damages caused by Lafayette's breach meant that the maximum penalty the trial court, in its discretion, could have assessed under that statute was $5,000.00. However, the interrogatory that immediately followed No. 10 and No. 21, respectively, contained a clear error of law in its instruction to the jury. Indisputably, the awarding of any amount of damages sustained by the breach under R.S. 22:1220 would require the jury to have responded "YES" to all of the first three questions in the above-quoted series, and the jury's having responded "NO" to the third question should have ended the inquiry. However, because the jury was improperly instructed to respond to the fourth question if it had answered "YES" to any of the preceding three, it is probable that the jury believed it was compelled to place an amount on the line provided for its response.[10]
Citing our decision in Vaughan Contractors, Inc. v. Cahn, 629 So.2d 1225 (La.App. 4th Cir.1993), Audubon argues that Lafayette waived its right to raise this error on appeal because Lafayette did not preserve any objections to the jury interrogatories at the trial or at the charge conference. The record does not contain a transcript of the charge conference, nor any other evidence that Lafayette did so object; moreover, Lafayette does not contend in its reply brief that it did object. Instead, Lafayette asserts that its argument on appeal is not, as was the contention in Vaughan, that the error in the jury interrogatories caused the jury to produce inconsistent responses. Rather, Lafayette contends that, considering the jury's finding that Audubon suffered no actual damages as a result of Lafayette's breach, it was legal error for the trial court to award any damages under R.S. 22:1220 because Audubon, as a juridical person, legally cannot sustain general damages, such as pain and suffering, aggravation, or inconvenience.
We find that the instant case is distinguishable from Vaughan. In that case, the defendants asserted that the jury's response to two initial interrogatories was inconsistent. The first interrogatory asked whether the defendants were justified in believing their contract with the plaintiff/contractor was terminated and in obtaining another contractor to complete the job, to which the jury answered "Yes." The second interrogatory asked whether the defendants had breached their contract with the plaintiff in such a way as to make the defendants responsible to the plaintiff for damages and/or labor and materials, to which the jury also answered "Yes." 629 So.2d at 1227-1228. The jury proceeded, in response to subsequent interrogatories, to find an amount of damages, which amount the trial court awarded to the plaintiff, and this court *976 affirmed on appeal. In his concurrence, Judge Ciaccio pointed out why, considering the facts of the case, the jury's responses to the first two interrogatories were not inconsistent. Id. at 1229. Moreover, in denying a motion for rehearing in Vaughan, Judge Plotkin, who authored this court's opinion, stated:
Certainly the language of the interrogatories in this case was not confusing. Further, there is no reason to believe that the jury did not understand the questions.

Id. at 1233.
Finally, the court in Vaughan noted that the record contained sufficient evidence to support the jury's factual determination that the contract had been breached. Id. at 1228.
In the instant case, unlike in Vaughan, the instructions contained in the jury interrogatories were not only confusing, but they also contained an incorrect statement of the law. Concerning special jury verdicts, La. C.C.P. art. 1812 provides:
A. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue. If the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue omitted unless, before the jury retires, he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding, or if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict.
B. The court shall inform the parties within a reasonable time prior to their argument to the jury of the special verdict form and instructions it intends to submit to the jury and the parties shall be given a reasonable opportunity to make objections.
* * * * *
D. The court shall enter judgment in conformity with the jury's answers to these special questions and in accordance with applicable law.

LSA-R.S. C.C.P. art. 1812 (emphasis added).
This article places an affirmative duty upon the trial court to give the jury proper instructions as are necessary for it to make its findings pursuant to the special verdict form; it also places upon the trial court the duty to enter judgment not only in accordance with the jury's answers, but also in accordance with the applicable law. The article contains no provision indicating that the trial court's failure to perform these duties cannot be reviewed on appeal in the absence of a contemporaneous objection by a party.
In the instant case, the applicable law, R.S. 22:1220, requires a finding that the insured sustained damages as a result of the insurer's breach in order for the trial court to award those damages and, in its discretion, a penalty of up to two times the amount of those damages. The jury found that Audubon did not sustain any actual damages as a result of Lafayette's breach; then, in an attempt to follow an incorrect instruction contained in the special verdict form, listed an amount of damages sustained *977 by Audubon at each location ($175,000.00 at the uptown location and $20,000 at the Metairie location).
Considering these facts, we find that the trial court committed legal error by permitting the jury to use a verdict form that did not comply with the applicable law, by ignoring the jury's factual finding that no damages were sustained by Audubon as a result of Lafayette's breach, and finally, by awarding damages in the second judgment that were not in accordance with the applicable law. We also find that Audubon's failure to object to the jury interrogatories does not bar this court from correcting the trial court's legal error on appeal.
Although we have reviewed this issue de novo, which is the appropriate standard for review of legal errors,[11] we also note that we would have arrived at the same conclusion using the manifest error standard used to review factual findings. The record in the instant case does not support the amounts of damages that were listed by the jury in response to Interrogatory Nos. 11 and 22, and awarded by the trial court in the second judgment.
There was very little evidence relating to damages Audubon allegedly sustained as a result of Lafayette's failure to timely pay the amounts due under the business interruption policy. Janene Gloebel, Audubon's office manager, testified that Audubon did not take out any loans or even access its existing credit line in order to keep its business in operation during the aftermath of Hurricane Katrina. Dr. Warren Bourgeois, managing partner of Audubon, testified that during the last two of the four months that Audubon had to operate out of only its Metairie location, patients were typically waiting three to four weeks for an appointment. Dr. Bourgeois testified that if Audubon had possessed more cash flow during that time, it "might" have been able to rent other available office space and thereby increase its capacity to see patients. He also testified that he and the other physician partners of Audubon had scaled back their pay after Katrina until "we could afford to start paying ourselves" again.[12] However, there was no evidence introduced suggesting or tying any monetary figures to Dr. Bourgeois's testimony. There was no evidence showing that Audubon suffered any specific amount of damages as a result of Lafayette's failure to timely pay the insurance proceeds. Therefore, even in the absence of the improper jury instruction, we would have found the jury's determination that Audubon sustained a total of $195,000.00 in damages as a result of Lafayette's breach to be manifestly erroneous.
Accordingly, we reverse the trial court's award of $175,000.00 and $20,000.00 in damages pursuant to R.S. 22:1220. When there are no damages sustained by the breach, the trial court may award a maximum of $5,000.00 in penalties under R.S. 22:1220. However, in the instant case the greater penalty would be that assessed pursuant to R.S. 22:658. To determine which version of R.S. 22:658 to apply, we must determine when the plaintiff's cause of action arose. See Sher v. Lafayette Ins. Co., 07-2441, pp. 15-16 (La.4/8/08), 988 So.2d 186, 199. As stated previously, in Sher the Louisiana Supreme Court held that the plaintiff's cause of action for penalties *978 under R.S. 22:658 arises when the insurer's obligation to pay occurs, which is thirty days after receipt of satisfactory proof of loss. Id. Audubon argues that the testimony of Lafayette's corporate representative and expert CPA indicated that Lafayette did not have satisfactory proof of loss prior to August 15, 2006, the effective date of the amendment to R.S. 22:658 that increased the mandatory penalty from twenty-five to fifty percent of the amount found to be due under the policy. However, the jury found (in response to Interrogatory Nos. 6 and 17) that Lafayette's failure to pay the entire amount of the loss at each location occurred prior to August 15, 2006, which finding is not manifestly erroneous in light of the entirety of the evidence. Therefore, according to the law as expressed by the Supreme Court in Sher, the appropriate amount of the penalty is twenty-five percent of the unreimbursed business income loss sustained at each location. We therefore amend the second judgment to include that penalty.

Attorney Fees
Lafayette contends that the award of attorney's fees in the second and third judgments constitutes legal error. Audubon disputes this contention and additionally argues that the award of attorney's fees, which the trial court increased to $75,000.00 in the third judgment, is so low as to be an abuse of discretion and therefore should be further increased. We agree with Lafayette that it was legal error for the trial court to award any amount of attorney's fees in the absence of contractual or statutory authority providing for such an award.
Louisiana courts have long held that attorney's fees may not be awarded except where authorized by statute or contract. Sher v. Lafayette Ins. Co, supra, 07-2441, p. 18, 988 So.2d at 201 (citing Rivet v. State, 96-0145 (La.9/5/96), 680 So.2d 1154; DOTD v. Williamson, 597 So.2d 439, 441 (La.1992)). Also, as we have previously stated, in Sher, supra, the Louisiana Supreme Court held that the 2006 amendment to La. R.S. 22:658 cannot be applied retroactively. 07-2441, pp. 17-18, 988 So.2d at 201.[13] Because the pre-amendment version of R.S. 22:658 B(1) did not provide for an award of attorney's fees, according to Sher, such an award may be made only if the plaintiff's claim arose after the effective date of the amendment. Id., pp. 15-16, 988 So.2d at 199. In the instant case, the jury found that Lafayette's breach, its arbitrary and capricious failure to pay the amounts due under its policy within thirty and/or sixty days of receipt of satisfactory proof of loss, occurred prior to the August 15, 2006 effective date of the amendment to R.S. 22:658. Therefore, because Audubon's claim arose prior to that date, there was no statutory provision in effect at that time which authorized an award of attorney's fees.
Nevertheless, Audubon argues that because the jury also found, in separate interrogatories, that Lafayette's failure to pay occurred after August 15, 2006, Lafayette's breach was continuing, which should trigger the application of the amended version of the statute. Precisely the same argument was rejected by the Louisiana Supreme Court in Sher. Addressing the issue of continuing breach, the Sher Court stated:
Here, although an insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period, the claim first arose prior to the amendment of R.S. 22:658. Because *979 the duty is a continuing one, had plaintiff not first made satisfactory proof of loss prior to the amendment of R.S. 22:658, his petition for damages served after the amendment became effective could have served as satisfactory proof, thereby triggering the time period set forth in the statute and could have subjected Lafayette to the penalties contained in the amendment because the claim would have first arisen after the amendment. Further, again because the duty is a continuing one, had plaintiff made satisfactory proof of loss prior to the amendment and had Lafayette paid that claim, and had plaintiff discovered new damage and made satisfactory proof which Lafayette failed to pay within the time period contained in the statute, but after the amendment became effective, Lafayette could have been subject to the penalties contained in the amendment because the claim would have arisen after the effective date of the amendment. Neither of those situations is the case here-the claim for the penalties contained within the statute arose prior to the effective date of the amendment. Plaintiff's argument that Lafayette's continuing breach of the duty of good faith and fair dealing made it subject to the increased penalties contained in the amended version of R.S. 22:658 is without merit.

Id., pp. 14-15, 988 So.2d at 199.
Relying on the above-quoted language, this court also has rejected exactly the same argument made by Lafayette herein. See Chalmette Retail Center v. Lafayette Ins. Co., 09-0217, pp. 29-30 (La.App. 4 Cir. 10/16/09), 21 So.3d 485, 504-505, writs denied, 09-2685, 09-2692 (La.4/9/10), 31 So.3d 392, 393. Just as in the instant case, in Chalmette the jury had answered "yes" to separate interrogatories, one asking whether Lafayette's failure to pay had occurred before August 15, 2006, and the other asking whether Lafayette's failure to pay had occurred after August 15, 2006. Based on Sher, we held that only the pre-amendment version of R.S. 22:658 could be applied. 09-0217, p. 30, 21 So.3d at 505.
Audubon next argues that because Lafayette's accountant, Mr. Cremers, opined that in September, 2006, Lafayette had not yet received enough information from Audubon to adequately analyze Audubon's claim, Lafayette has admitted that it did not receive satisfactory proof of loss until after the effective date of the amendment, thereby transforming the instant fact situation into one of the two exceptions cited by the Supreme Court in the above-quoted language from Sher. We disagree. Lafayette presented Mr. Cremers testimony as part of its defense to Audubon's allegation that Lafayette had failed to pay its claim within thirty days of receipt of satisfactory proof of loss. Mr. Cremers' testimony was designed to show that Lafayette had not received satisfactory proof of loss by September, 2006. However, the jury obviously rejected Mr. Cremers' assertion because it found that prior to August 15, 2006, Lafayette arbitrarily and capriciously failed to pay Audubon's loss within thirty days of having received satisfactory proof of such loss. After prevailing on that factual issue with the jury, Audubon ironically now argues the oppositethat we should ignore the jury's findingin order to affirm the award of attorney's fees. Audubon cannot have it both ways.
According to the above-quoted language from Sher, if the insurer has received satisfactory proof of loss and has failed to pay timely, and if both these events have occurred before the effective date of the amendment to R.S. 22:658, the insured's claim arises under the pre-amended version of the statute. The first exception noted by the Supreme Court, in which the plaintiff's petition may serve as satisfactory proof of loss, expressly applies only *980 "had [the] plaintiff not first made satisfactory proof of loss prior to the amendment of R.S. 22:658." Sher, supra, p. 14, 988 So.2d at 199. The second exception noted in Sher applies when the insurer has paid the claim, but the plaintiff then discovers new damages for which the satisfactory proof of loss is received and/or the failure to pay timely occurs after August 15, 2006. Neither exception applies under the facts of the instant case. Therefore, we find conclude that because Audubon's claim arose prior to the effective date of the 2006 amendment to R.S. 22:658, the trial court erred by awarding attorney's fees in this case.
Our conclusion moots Audubon's argument that the increased amount of attorney's fees awarded in the third judgment should be further increased on appeal. Accordingly, we reverse the award of attorney's fees in second judgment and reverse the third judgment (entitled "Judgment on Motion for New Trial Regarding Attorney's Fees") in its entirety.

Amount of Business Income Loss
Answering the appeal, Audubon contends the amount of business income loss found by the jury and awarded by the trial court is so deficient as to constitute an abuse of discretion. The standard for appellate review of an award of damages for breach of contract is whether the trial court abused its discretion in making the award. Taaffe v. Factory Direct Installations, Ltd., 08-0175, p. 14 (La.App. 4 Cir. 4/15/09), 13 So.3d 562. Under this standard, the question is not whether a different award might be more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from that evidence; the fact that the evidence might also support a greater or smaller award does not justify a change in amount by the appellate court. Bitoun v. Landry, 302 So.2d 278, 279 (La.1974).
In the instant case, Audubon contends that the jury's finding of $267,890.65 in total loss of business income for both locations is an abuse of discretion because that amount is lower than the amounts resulting from the calculations of both the plaintiff's expert and the defendant's expert.[14] We note, however, that the jury's handwritten notes on the verdict form in the record indicate that its determination was based upon the testimony of Lafayette's expert, Dale Cremers, with certain amounts deducted for each location.[15] The most logical inference from these handwritten notes is that the amounts deducted by the jury were based upon its determination of the length of the "period of restoration" as defined in the policy for each location. Because the coverage under the policy is based upon the amount of business income lost during the "period of restoration," the length of this period for each location was an additional factual finding the jury had to consider to properly determine the amount of Audubon's loss. In determining the applicable period of restoration for each location, the jury reasonably could have made deductions from the expert's amount to account for the policy exclusions, specifically, the flood/ water damage exclusion and/or the delay exclusion (the evidence that Audubon's reopening at the uptown location may have *981 been delayed by the refusal of a third party to let building tenants return earlier). Neither expert testified that he had considered the potential impact of those exclusions in making his calculations. Also, it is not inherently unreasonable for the jury to reject the testimony of one expert and accept that of another. See Asbestos v. Bordelon, 96-0525, p. 82 (La. App. 4 Cir.10/21/98), 726 So.2d 926, 973.
Therefore, because we conclude that the amount of business income loss found by the jury is reasonably supported by the evidence, we decline to disturb the trial court's award of this amount.

Costs
Citing La. C.C.P. article 2164, Audubon argues that we should exercise our discretion to award the plaintiff costs both at the trial court level and in connection with this appeal. Article 2164 allows the appellate court to render any judgment "which is just, legal, and proper upon the record," specifically including awarding damages for frivolous appeal and/or taxing either party with trial and/or appeal costs to achieve equity. We do not find the trial court's failure to award costs to be an abuse of discretion, nor has Audubon demonstrated that equity demands we award costs in the instant case. We therefore reject this argument as specious.

CONCLUSION
For the reasons stated, we:
(1) Affirm the trial court's September 30, 2008 judgment insofar as it vacates the prior judgment; finds in favor of the plaintiff; awards the plaintiff business income in the amount of $240,819.58, less amounts previously paid, for losses sustained at plaintiff's 2820 Napolean Ave., New Orleans location and in the amount of $27,071.07 for losses sustained at plaintiff's 3939 Houma Blvd., Metairie location; and assesses judicial interest, from the date of judicial demand until paid, on the aforementioned award of business income.
(2) Amend the September 30, 2008 judgment to award the plaintiff penalties under La. R.S. 22:658 in the amount of $66,972.66, which is twenty-five percent (25%) of the total business income found to be due under the policy and not paid timely pursuant to the statute, and judicial interest on this amount.[16]
(3) Reverse the September 30, 2008 judgment insofar as it awards damages under La. R.S. 22:1220 in the amounts of $175,000.00 for the plaintiff's New Orleans location and $20,000.00 for the Metairie location, attorney fees in the amount of $5,000.00, and judicial interest on these amounts.
(4) Reverse the trial court's April 20, 2009 judgment in its entirety.
AFFIRMED IN PART, AMENDED IN PART AND REVERSED IN PART.
McKAY, J., Concurs in Part and Dissents in Part for the Reasons Assigned by Judge LOVE.
LOVE, J., Concurs in Part and Dissents in Part and Assigns Reasons.
LOVE, J., Concurs in Part and Dissents in Part and Assigns Reasons.
I respectfully dissent from the majority's reversal of the trial court's September *982 30, 2008 judgment insofar as it reverses the award of damages per resolution of the interrogatories presented to the jury at trial. Further, I dissent from the majority's amendment of the trial court's judgment in that it assesses penalties under La. R.S. 22:658 in that I would affirm the trial court's awards under La. R.S. 22:1220.
I concur in the majority's affirmation of the trial court's September 30, 2008 judgment insofar as it vacates the prior judgment; finds in favor of the plaintiff; awards the plaintiff business income for losses sustained in New Orleans and Metairie; and assesses judicial interest. Also, I dissent from the majority's reversal of the trial court's award of attorney's fees.
The majority finds that the trial court committed legal error by permitting the jury to use a verdict form that did not comply with the applicable law. Also, the majority finds that Audubon's failure to object to the jury interrogatories does not prevent this court from correcting the trial court's legal error on appeal. Under that basis, the majority reviews this issue de novo and finds that the trial court ignored the jury's factual finding that no damages were sustained by Audubon and by awarding damages that were not in accordance with applicable law. I disagree.
The majority finds that the answers to the first jury interrogatory are inconsistent with the answers to successive interrogatories, which requires reversal of the trial court's judgment. The majority specifically concludes that despite the jury's entry of an amount of damages on the jury form, "[t]he jury found that Audubon did not sustain any actual damages as a result of Lafayette's breach; then, in an attempt to follow an incorrect instruction contained in the special verdict form, listed an amount of damages sustained by Audubon Orthopedic and Sports Medicine, APMC ("Audubon") at each location ($175,000.00 at the uptown location and $20,000 at the Metairie location)." Further, the majority opines that "it is probably that the jury believed it was compelled to place an amount on the line provided for its response." I find no authority for this resolution of the jury interrogatory issue, as it is an implied conclusion of the fact-finder's beliefs.
First, I do not find that the appellants are properly before this Court on the issue of jury interrogatories. La. C.C.P. art. 1812(C)(4) provides:
(C) In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
(4) The total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars, and, if appropriate, the total amount of exemplary damages to be awarded.
La. C.C.P. art. 1812(C)(4).
Further, La. C.C.P. art. 1793 provides:
A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the *983 grounds of his objection (Emphasis added). If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
D. The jury may take with it or have sent to it a written copy of all instructions and charges and any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
La. C.C.P. art. 1793
Thus, unless a party objects to jury instructions before the jury retires or immediately thereafter, that party may not assign as error the giving of that instruction. Further, failure to make a contemporaneous objection to either jury interrogatories or a verdict form precludes a party from raising the issue for the first time on appeal. Whited v. Home Depot U.S.A., Inc., 27,938 (La.App.2d Cir.8/3/96), 712 So.2d 97, writ denied, 96-2340 (La.11/22/96), 683 So.2d 282; Luman v. Highlands Insurance Company, 25,445 (La.App.2d Cir.2/23/94), 632 So.2d 910. The objection must be specific and allow the trial judge an opportunity to correct the error. Jordan v. Intercontinental Bulktank Corporation, 621 So.2d 1141 (La. App. 1st Cir.1993), writs denied, 623 So.2d 1335, 1336 (La.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994).
Further, I do not find that a change in caption allows the appellant to circumvent the substantive requirement that a jury instruction issue be properly preserved for appeal. The jury interrogatories required the jury to enter a damage award if the answer to "any" rather than "all" of three questions posed was "yes." While the appellant states that legal error resulted from these interrogatories that related to each location, the appellant does not categorize its assignment of error as a challenge to the jury instructions given at the trial court. Rather, the appellant captions its assignment of error as a claim that the trial court committed legal error by permitting the jury to use a verdict form that did not comply with applicable law. The appellant claims that due to the trial court's improper instruction, the jury improperly listed a damage award, and the trial court erred in subsequently entering a damage award in favor of the appellees.
Lafayette did not launch a challenge to the jury instructions as required by law. As the majority states, the record does not contain a transcript of the charge conference nor any evidence that Lafayette preserved objections to the jury interrogatories at the trial or at the charge conference. Before this Court, Lafayette now contends that the jury's entry of an amount for penalties despite the jury's answers to the other jury interrogatories resulted in a legal error. However, the trial court construed the jury's entry of an amount of penalties as a finding that damages were sustained by Audubon. By failing to make an objection to the interrogatories before the interrogatories were presented to the jury, the appellants waived their right to have the issue considered on appeal. Soares v. Lewis, 566 So.2d 129 (La.App. 5th Cir.1990); Streeter v. Sears, Roebuck & Co., Inc., 533 So.2d 54 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1255 (La.1989). I therefore find that the appellant's issue is actually a jury interrogatory issue, and is therefore not properly before this Court.
After de novo review based on the purported legal error committed by the trial court, the majority finds that the record before us does not support the amounts of damages that were listed in jury responses to Interrogatory Nos. 11 and 22 and awarded by the trial court. However, I find the manifest error standard of review applicable in the matter sub judice *984 and, unlike the majority, I do not find that the same conclusion is reached when using the manifest error standard.
Further, unlike the majority, I do not find the matter before us distinguishable from Vaughan Contractors, Inc. v. Cahn, 629 So.2d 1225 (La.App. 4th Cir.1993). In Vaughan, the defendants maintained that two of the jury's responses to interrogatories were inconsistent with one another, and, as a result, in response to subsequent interrogatories, the jury found an amount of damages, which the trial court awarded to the plaintiff. Id. at 1227. This Court affirmed the trial court's judgment. Id. at 1229.
The Louisiana Supreme Court has consistently instructed courts of appeal to give great, "even vast," deference to findings of fact made by the trial court. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). "With each pronouncement, the Supreme Court's language becomes stronger, consistently admonishing courts of appeal that error correction in factual disputes is virtually non-existent." Vaughan, 629 So.2d at 1228.
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), the Louisiana Supreme Court held that when "a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Id. at 845. After Rosell, the only factual findings subject to reversal were those "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story." Id.
In Stobart v. State, 617 So.2d 880 (La. 1993), the Court emphasized the principle that a factfinder's choice between two permissible views of the evidence "cannot be manifestly erroneous or clearly wrong." Id. at 883. That principle was reaffirmed in Youn, 623 So.2d 1257, which discusses the "vast" discretion afforded a fact-finder in reference to setting damage awards, and concludes that "an appellate court should rarely disturb an award of general damages." Id., 623 So.2d at 1261. "The Supreme Court's indication that a trial court judgment should rarely be disturbed can only mean that reversal of a judgment is warranted only in those rare cases where the record contains little or no evidence to support the trial court's conclusions."
Given the jurisprudence, I find that the manifest error standard of review applicable in the review of damages in the instant matter. Thus, I would apply the manifest error standard to the trial court's damage award entry.
As to damages and penalties, as the majority states, La. R.S. 22:1220 requires a finding that the insured sustained damages as a result of the insurer's breach for the trial court to award those damages. Pursuant to La. R.S. 22:1220, if damages as a result of the breach have been awarded, the trial court may, in its discretion, also award a penalty of up to twice the amount (200%) of those damages.
Dr. Warren Bourgeois, the managing partner of Audubon, testified as follows:
Q. As a result of the damage that occurred to your 2 buildings did Audubon Orthopedics as a corporation have to take out any loans to finance anything, pay salaries or do anything?
A. I don't think we took out any loans. We as physicians scaled back our pay significantly until things were back up to where we could afford to start paying ourselves again.
Q. Did you have to fire any of your contract doctors because you could not afford to pay them?
*985 A. Just didn't get paid. Didn't have to fire anybody.
In support of the reversal of the trial court's damage award, the majority states that there was "very little evidence" that damages were sustained by Audubon "as a result of Lafayette's failure to timely pay the amounts due under the business interruption policy." The majority rests this conclusion on the fact that Audubon "did not take out any loans or even access its existing credit line in order to keep its business in operation during the aftermath of Hurricane Katrina" as attested to by Janene Gloebel, Audubon's office manager.
Unlike the majority, I do not find the fact that Audubon did not take out loans or use a credit line the only indication of whether damages were sustained. Dr. Bourgeois testified that for two of the four months, Audubon was forced to operate solely from its Metairie location. He further testified that operating out of one location perhaps decreased their capacity to see patients, as patients would typically wait three to four weeks for an appointment. He also testified that physician partners were required to scale back their pay after Hurricane Katrina until they could afford to pay themselves again.
As the trial court entered a damage award based on the findings of the jury and the record, I find no basis for supplanting this Court's own judgment as to what it is probable that the fact-finder believed based on what they may have been compelled to place on the line for damages. I further find the majority's conclusion an implied indication that the jury did not believe that the Audubon sustained actual damages as a result of Lafayette's action or inaction. There are various reasons as to why the jury may have provided an amount for damages, and the trial court was in the best position to assess the fact-finder's action.
Where there is a conflict in the testimony, a trial court's or a jury's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court or the jury. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Further, where there are two permissible views of the evidence, the trial court's or the jury's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 844 (La.1989). See also Harvey v. Cole, 00-1849 (La.App. 4 Cir. 1/23/02), 808 So.2d 771.
I find that the record contains sufficient proof of damages sustained by Audubon as a result of Lafayette's breach of La. R.S. 22:1220.
I therefore dissent from the majority's reversal of the trial court's award of damages under La. R.S. 22:1220 in the amounts of $175,000.00 for the New Orleans Location and $20,000.00 for the Metairie location. I would affirm the of the trial court's damage awards under La. R.S. 22:1220 in the amounts of $175,000 and $20,000.
Further, I dissent from the majority's amendment of the trial court's judgment in that it assesses penalties under La. R.S. 22:658 in that I would affirm the trial court's awards under La. R.S. 22:1220. As the majority states, a trial court may not award penalties under both La. R.S. 22:1220 and La. R.S. 22:658. Thus, Lafayette can only be liable for penalties under only one of these two bad-faith insurer statutes, whichever one provides the greater penalty. In this instance, I find that the greater penalty assessment results from the application of La. R.S. 22:1220.
I concur with the majority's affirmation of the trial court's September 30, 2008 judgment insofar as it vacates the prior judgment; finds in favor of the plaintiff; *986 awards the plaintiff $240,819.58 in business income for losses sustained in New Orleans and $27,071.07 for losses sustained in Metairie; and assesses judicial interest on the business income award from the date of judicial demand until paid.
Finally, I dissent from the majority's reversal of the trial court's award of attorney's fees. The amendment of La. R.S. 22:658 became effective on August 15, 2006. According to Sher v. Lafayette, there are two circumstances under which an insured's claim could arise after the effective date of the amended statute. Sher v. Lafayette Ins. Co., 2007-2441 (La. 2008), 988 So.2d 186, 198. First, if insured did not provide satisfactory proof of loss prior to the amendment of La. R.S. 22:658, the petition for damages can serve as satisfactory proof and trigger the 30-day period. Id. at 199. Secondly, as the duty is a continuing one, the Sher Court considers the circumstance where the insured made satisfactory proof of loss prior to the amendment and the insurer paid that claim. Under this scenario, if the insured discovered new damage and provided satisfactory proof of loss, which the insurer failed to pay within the time period contained in the statute, but after the amendment became effective, the insurer is subject to the penalties contained in the amendment because the claim would have arisen after the effective date of the amendment. Id.
The majority finds that neither exception applies under the instant facts. The majority states that "the jury obviously rejected Mr. Cremers' assertion because it found that prior to August 15, 2006, Lafayette arbitrarily and capriciously failed to pay Audubon's loss within thirty days of having received satisfactory proof of such loss (emphasis added)." I disagree.
The jury found in response to Interrogatory Nos. 6 and 17 that Lafayette's failure to pay the entire amount of the loss at each location occurred "prior to August 15, 2006" (emphasis added). However, Interrogatory Nos. 7 and 18 also contain the following language about failure to pay "after" August 15, 2006, the effective date of the amendment of La. R.S. 22:658, subjecting Lafayette to payment of attorney's fees contained in the amendment (emphasis added). Interrogatory Nos. 7 and 18 read as follows:
7. Did any such failure to pay loss sustained at the uptown location occur after August 15, 2006? If so, what amount should have been paid?
$240,819.58
18. Did any such failure to pay loss sustained at the uptown location occur after August 15, 2006? If so, what amount should have been paid?
$ 27,071.07
(Emphasis added).
The majority relies on Chalmette Retail Center v. Lafayette Ins. Co. 09-0217, pp. 29-30 (La.App. 4 Cir. 10/16/09), 21 So.3d 485, 504-05, and states that Chalmette held that only the pre-amendment version of La. R.S. 22:658 could be applied where the jury answered "yes" to separate interrogatories. In Chalmette, one jury interrogatory asked whether Lafayette's failure to pay occurred before August 15, 2006, and the other asked whether Lafayette's failure to pay occurred after August 25, 2006. Id.
However, in Chalmette, "CRC [Chalmette Retail Center] notified Lafayette of its claim on September 9, 2005; submitted proof of loss as to the business income claim in January, 2006; and filed its petition seeking damages for the business income loss on August 29, 2006 (emphasis added)." Id. at p. 29, 21 So.3d at 504. As a result, this Court found that "the insurer's breach (failure to pay the claim within thirty days after receipt of the proof of loss) occurred prior to the August 15, 2006 effective date of the amendment; however, *987 the petition was filed after the effective date." Id.
I find Chalmette distinguishable from the instant matter. Unlike Chalmette, the record demonstrates that Audubon did not submit satisfactory proof of loss prior to the amendment date of the statute. Lafayette's expert, Mr. Dale Cremers, CPA, when referring to Audubon's claim, testified that as of September 26, 2006, after the amendment date of the statute, "there was not near enough information to adequately analyze it." Thus, Mr. Cremer's testimony provides support for the jury's finding that Audubon did not provide satisfactory proof of loss after the amendment of La. R.S. 22:658 as of August 15, 2006.
The jury found that Lafayette failed to pay losses sustained by Audubon both before and after August 15, 2006. As a result, the trial judge awarded attorney's fees. Given the jury's findings and the supporting testimony adduced at trial, I find that attorney's fees were properly awarded in the matter sub judice. The jury's findings and the evidence adduced at trial support the trial court's award of attorney's fees under La. R.S. 22:658. I would therefore affirm the trial court's award of attorney's fees.
In conclusion, I would affirm the trial court's award of damages pursuant to La. R.S. 22:1220; I would affirm the trial court's judgment insofar as it vacates the prior judgment, finds in favor of the plaintiff, awards business income for losses, and assesses judicial interest; I would not amend the trial court's second judgment that eliminated the original judgment's assessment of a penalty under La. R.S. 22:658; and I would affirm the trial court's award of attorney's fees.
NOTES
[1] Pursuant to La. Acts 2008, No. 413, effective January 1, 2009, which amended and reenacted the Louisiana Insurance Code, these two statutes were renumbered, to wit: R.S. 22:1220 became R.S. 22:1973, and R.S. 22:658 became R.S. 22:1892. For the sake of clarity, however, throughout this opinion we will refer to these statutes using the numbers they bore at the time the conduct in question occurred, which was prior to the effective date of the reenactment.
[2] Lafayette received a credit against this award for the amount it had previously paid, which was $133,974.90.
[3] The record does not contain a transcript of this hearing and neither party can confirm whether the hearing was ever transcribed. During oral arguments before this court, the parties agreed that to their knowledge, no transcript of this hearing exists.
[4] Alternatively, if the judgment has been based upon a jury verdict, the aggrieved party may seek alteration of the judgment by asserting a timely motion for judgment notwithstanding the verdict [JNOV] pursuant to the La. C.C.P. art. 1811. However, none of the parties in the instant case has asserted such a motion. Unlike La. C.C.P. art. 1971, which governs motions for new trial, article 1811 does not permit the trial court to enter a JNOV on its own motion. Therefore, when no party has moved for a JNOV, it is error for the trial court to sua sponte enter a JNOV. Parmelee v. Kline, 579 So.2d 1008, 1012 (La. App. 5th Cir.1991), writ denied 586 So.2d 564 (La.1991).
[5] La. C.C.P. art. 1974 provides that the delay for applying for a new trial is seven days, exclusive of legal holidays, commencing to run on the day after the clerk has mailed the notice of signing of judgment. In this case, the record reflects that the clerk of court mailed the notice of judgment on November 6, 2007, and that the plaintiff's motion for new trial was filed November 15, 2007. Considering that November 10 and 11 (Saturday and Sunday) were legal holidays, the motion was timely filed.
[6] Had we found otherwise, our conclusion would have necessitated not only the reinstatement of the original judgment (the result Lafayette seeks), but also a remand to the trial court for determination of the still pending motion for new trial. The delay for appealing a judgment does not commence, and appellate jurisdiction does not attach, until all timely-filed motions for new trial have been decided. See La. C.C.P. arts. 2087, 2088. Under the circumstances of the instant case, we believe that such a remand would be a waste of judicial time and resources.
[7] The Court in Sher expressly rejected the insured's argument that the amended version of the statute should be applied because the insurer's duty to pay was a continuing duty that extended past the effective date of the amendment. 07-2441, pp. 14-15, 988 So.2d at 199. The Court also held that the amendment cannot be applied retroactively. Id., pp. 15-18, 988 So.2d at 199-201.
[8] When attorney fees are provided for, as they are under R.S. 22:658 B(4) (relating to property damage claims on vehicles) or presumably, in R.S. 22:658 B(1) for several years prior to its 2006 amendment, the insured is entitled to recover attorney fees under R.S. 22:658 and penalties under R.S. 22:1220, where it provides for a greater penalty than does R.S. 22:658. Ibrahim v. Hawkins, supra, 02-0350, p. 6, 845 So.2d at 478 (citing Calogero v. Safeway Ins. Co. of Louisiana, 99-1625, p. 7 (La.1/19/00), 753 So.2d 170, 174).
[9] The jury also found that Lafayette initiated loss adjustment for both locations within thirty days of notification of loss, and therefore the trial court did not consider any penalties pursuant to R.S. 22:658 A(3). The plaintiffs do not challenge this finding on appeal.
[10] We note that both Interrogatory Nos. 11 and 22 had a dollar sign preceding the blank line provided for the jury's response, a further indication that the jury was expected to provide an amount in response.
[11] Bell v. Glaser, 08-0279, p. 4 (La.App. 4 Cir. 7/1/09), 16 So.3d 514, 516; Edwards v. Pierre, 08-0177, p. 9 (La.App. 4 Cir. 9/17/08), 994 So.2d 648, 656
[12] Dr. Bourgeois' suggestion that the departure of one of Audubon's physicians, who left the practice after Katrina, might be attributable to Lafayette's conduct was objected to as speculative and was excluded by the trial court. This evidentiary ruling has not been raised as an error on appeal.
[13] Sher v. Lafayette Ins. Co., supra, 07-2441, pp. 14-19, 988 So.2d at 199-201. See also: footnote 7, supra.
[14] Audubon's expert, Brenda Harris, calculated the amount to be $542,887.00; Lafayette's expert, Dale Cremers, calculated the amount to be $412,341.45.
[15] Next to its response to Interrogatory No. 3, regarding the amount of business income loss for the uptown location, the jury wrote: "Cremers' calculations (Oct.-Jan. N.O. + Phys. Therapy minus Aug. & Sept.)." Next to its response to Interrogatory No. 14, regarding the amount of business income loss for the Metairie location, the jury wrote: "Aug. + 1st 2 wks of Septtemp. loc."
[16] We have calculated this penalty based upon the entire amount due by Lafayette as found by the jury, as did the trial court in its first, now vacated judgment. This calculation assumes that none of the amounts that have been already paid by Lafayette were paid within thirty days of Lafayette's receipt of satisfactory proof of loss, which the jury found to have occurred prior to Aug. 15, 2006.